**Mindy HURST, b/n/f David Hurst and David Hurst, individually, Plaintiffs–Appellants,**

**v.**

**Robert E. DOUGHERTY, M.D., Defendant–Appellee.**

Court of Appeals of Tennessee, Eastern Section.

Sept. 12, 1990.

Permission to Appeal Denied by Supreme Court Dec. 3, 1990.

J.D. Lee (J. Nicklas Holt, of counsel), Knoxville, for plaintiffs-appellants.

James G. O'Kane, (Poore, Cox, Baker, Ray & Byrne, of counsel), Knoxville, for defendant-appellee.

## OPINION

FRANKS, Judge.

In this medical malpractice action the plaintiff, whose finger was amputated during her delivery by caesarean section, appeals from an adverse jury verdict and assigns as error a portion of the trial court's instructions to the jury and also contends there is no material evidence to support the verdict.

Plaintiff was delivered by caesarean section, performed on August 6, 1985. The defendant physician amputated part of the infant plaintiff's little finger while extracting her from the womb.

Plaintiff's mother entered the hospital on the day before delivery with severe bouts of nausea and vomiting. Her labor progressed slowly and, due to complicating factors, the doctor elected. to perform a caesarean section which is not questioned.

Several factors combined to complicate the surgery. The mother's partial labor contractions caused the uterine wall to thicken and a large amount of meconium, a dark sludge-like bowel fluid excreted by the fetus, was present obscuring the surgeon's vision and lending a sense of urgency to the procedure since it could have choked the fetus. Finally, the fetus was in an unusual position, *i.e.*, wedged against the posterior of the uterus with its hand over its ear.

The presence of the meconium required a nurse to suction the fluid out of the cavity during the operation and the suction apparently "held" the finger rigid so that it did not move away from the doctor's touch as it normally would have done. During the operative procedure, defendant made the initial incision with bandage scissors and then inserted one finger in the incision to lift the tissue away from the fetus. When defendant felt the finger between the tip of the scissors, he concluded it was a fibroid or rigid tissue caused by a uterine contraction and it was only after he cut did he realize that it was something else. The tip of the finger was ultimately located in the suctioning device.

Plaintiff offered expert testimony that a surgeon should always insert two fingers into the incision and that the failure to do so was negligence. Defendant's medical expert disagreed with this analysis and said the use of one finger was well within the standard of care. Medical treatises introduced by plaintiff did not contradict this analysis. *Cf.* (Where a delivering physician's procedure was to make three or four "swipes" at the uterine wall, the issue of malpractice was for the jury. *Bowie ex rel. Bowis v. Hearn*, 294 S.C. 344, 364 S.E.2d 469 (1988). *See generally*, Annot. 76 A.L.R.4th 1112 (1990).)

Defendant's medical expert testified as to defendant's performance:

He knew he had a problem. He used a finger. He stated that when he started to use the scissors he felt something that either felt different—I'm paraphrasing here a little bit—either felt different or didn't feel right, or he was not exactly sure what it might be. He says he ran that through his brain, his mental computer, and considered a fibroid or a mass in the uterus, contraction ring where the uterus sometimes just gets thick. He, in effect, in his mind satisfied himself that this was not a fetal part, that it was something in the uterus and he went ahead and made his second cut to the right, which is the cut that amputated the tip of the baby's finger. I think he went through all of the mental processes that one would go through to evaluate

his situation before he did that. So, with all that interpreted from the record, I think that he did everything that I would consider reasonable.

■ Tenn.Code Ann. § 29–26–115 codifies the common law on medical malpractice. *See Cardwell v. Bechtol*, 724 S.W.2d 739 (Tenn.1987). A plaintiff is required to prove by expert testimony the standard of care, that defendant deviated from that standard and as a proximate result of the defendant's negligent act or omission the plaintiff suffered injuries which would not otherwise have occurred.

*Ward v. United States*, 838 F.2d 182, 186 (6th Cir.1988), summarizes the rule in this jurisdiction:

Under Tennessee law, a physician's duty is to exercise reasonable care and diligence. He must exercise his best judgment regarding treatment, and is not guilty of malpractice if he chooses a course of treatment supported by other physicians in good standing. *Truan v. Smith*, 578 S.W.2d 73, 75–76 (Tenn.1979). A physician is not the insuror of the patient; he is only liable for negligence, and negligence is not presumed from the fact that the treatment is unsuccessful. Liability for malpractice depends on whether or not the physician is lacking in and fails to exercise the reasonable degree of learning, skill, and experience that is ordinarily possessed by others of his profession. *Watkins v. United States*, 482 F.Supp. 1006, 1012 (M.D. Tenn.1980).

There is no presumption of negligence; rather, the law presumes the physician has discharged his full duty. *Redwood v. Raskind*, 49 Tenn.App. 69, 350 S.W.2d 414 (1961). Moreover, negligence may not be presumed from the mere fact of injury. *Johnson v. Lawrence*, 720 S.W.2d 50, 56 (Tenn.Ct.App.1986). An honest mistake in judgment is not sufficient to find a physician negligent. *Perkins v. Park View Hosp.*, 61 Tenn.App. 458, 456 S.W.2d 276 (1970).

■ In the *Ward* case, a doctor had accidentally injected Teflon paste too deeply in

an artery which caused the patient to suffer a stroke. As in this case, there is no dispute that the doctor did the act that was the proximate cause of the patient's injury. The *Ward* case, following Tennessee law, affirmed the trial court's decision that the doctor was not liable since he exercised due care in making the injection.

There is ample material evidence to establish defendant's conduct was within the standard of care required of physicians performing caesarean sections.

■ Plaintiff argues the trial court's charge is erroneous and focuses on the instruction: "A physician is not negligent merely because he makes a mistake or errs in judgment." It appears plaintiff is contending that the trial judge erred in using only a portion of the "choice of treatment" rule set out in Tennessee Pattern Instructions, § 6.15:

ALTERNATIVE METHODS.

When there is more than one recognized method of diagnosis or treatment, and no one of them is used exclusively and uniformly by all practitioners of good standing, a physician [surgeon] is not negligent if, in exercising his best judgment, he selects one of the approved methods that later turns out to be unsuccessful, or one not favored by certain other practitioners.

But plaintiff then argues the use of the complete instruction would have been error in any event because there was no choice of treatment issue in the case. The charge does not contain the choice of treatment rule; instead, the passage objected to by the plaintiff is derived from Tennessee Pattern Instruction § 6.04, which includes:

PROFESSIONAL PERFECTION NOT REQUIRED.

A _____ is not negligent merely because [his efforts were unsuccessful] [he makes a mistake] [he errs in judgment] in the matter for which he is engaged.

However, if the _____ was negligent as defined in these instructions, it is not a defense that he did the best he could.

This is another way of saying a physician is not an insuror of his professional performance but may be found negligent for failure to exercise due care.

■ The specific portion of the charge complained of must be viewed in context. *See In re Estate of Elam*, 738 S.W.2d 169 (Tenn.1987). Although the charge must be substantially accurate, it need not be perfect in every detail. *See Mitchell v. Smith*, 779 S.W.2d 384 (Tenn.App.1989). The jury instructions, when fully considered, meet the requirements of Tenn.Code Ann. § 29–26–115. We find no reversible error in the instructions.

The judgment of the trial court is affirmed, with cost of appeal assessed to appellants.

SANDERS, P.J. (E.S.), and WILLIAM H. INMAN, Special Judge, concur.