Booker T. SANDERS and Wife, Glenie
Sanders, Plaintiffs/Appellees,

v.

Rodney K. JOHNSON,
Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section,
at Jackson.

March 10, 1993.

Application for Permission to Appeal
Denied by Supreme Court
June 1, 1993.

Al H. Thomas, Ira M. Thomas, Thomas &
Thomas, Memphis, for plaintiffs/appellees.

Leo Bearman, Bradley Trammell, Heis-
kell, Donelson, Bearman, Adams, Williams
& Kirsch, Memphis, for defendant/appel-
lant.

TOMLIN, Presiding Judge, Western
Section.

This is a personal injury case. Booker T.
Sanders ("plaintiff") sustained personal in-
juries of an undetermined nature when the
truck he was driving was struck by an
automobile driven by Rodney K. Johnson
("defendant"). Plaintiff and his wife
brought suit in the Circuit Court of Shelby
County for damages he sustained in the
accident along with loss of consortium
claimed by her. Following a jury trial, the
jury returned a verdict in favor of plaintiff-
husband in the amount of $60,000 and in
favor of plaintiff-wife for $40,000. The
trial court denied defendant's motion for a
new trial but granted a remittitur of each
verdict in the amount of $5000. On appeal
defendant has raised the following issues:
(1) Did the trial court err in charging the
jury concerning the award of damages for
permanent injuries to plaintiff in light of
the proof; (2) were remarks by plaintiffs'
counsel in closing argument improper and
prejudicial to defendant; (3) did the trial
court err in failing to give defendant's pro-
posed jury instruction concerning sudden
emergency; (4) was the verdict so outside
the range of reasonableness as to indicate
passion, prejudice, sympathy and caprice on
the part of the jury; and (5) is the defen-
dant entitled to an additional remittitur?
We are of the opinion the trial court com-
mitted reversible error and therefore re-

verse and remand for a new trial. For reasons that will be obvious, we pretermit the fourth and fifth issues.

The accident occurred at the intersection of Delta and Ford Streets in Memphis. Plaintiff was travelling north on Ford when he was struck broadside by the defendant's vehicle which was travelling east on Delta. Stop signs control traffic travelling east and west on Delta, while traffic proceeding north and south on Ford has the right of way. The force of the impact caused plaintiff's truck to roll over and come to rest upside down.

Approximately one hour following the accident plaintiff was examined by Dr. Walter Rentrop. Following the examination, which included the taking of X-rays, Dr. Rentrop diagnosed plaintiff as having incurred a neck strain, and prescribed muscle relaxers for pain. He instructed plaintiff to return if he had any more problems. Plaintiff never returned.

Plaintiff experienced more pain in the week following the accident, and sought the advice of an attorney, who referred him to another physician, Dr. Avron Slutsky. Following an examination by Dr. Slutsky, plaintiff was diagnosed as having back and neck strain as a result of the accident. In addition, Slutsky was of the opinion that the accident had aggravated a pre-existing osteoarthritic condition in plaintiff's right hip.

Plaintiff saw Dr. Slutsky some five times thereafter, and was discharged in June, 1989, following the accident, which occurred in October, 1988. Motivated by continuing pain in his right hip, plaintiff saw Dr. Slutsky once in January, 1990, and in November, 1991.

Plaintiff was diagnosed as having osteoarthritis in his right hip in 1984. At that time his doctor concluded that he had "severe degenerative arthritis in the right hip, which will require total joint replacement in the *near future.*" (Emphasis supplied.) Notwithstanding the above diagnosis, plaintiff testified at trial that he had no pain or symptoms in his right hip prior to the accident. On one of his last visits to Dr. Slutsky, Slutsky corroborated the medi-

cal diagnosis made some six or seven years previous that the osteoarthritic condition of his right hip necessitated a total joint replacement in order to relieve the pain.

## I. *THE JURY CHARGE ON PERMANENT INJURIES*

Dr. Rentrop, who only saw plaintiff once shortly after the accident, testified that in his opinion, plaintiff would have no permanent disabilities associated with his injuries.

Dr. Slutsky, plaintiff's treating physician, testified as follows concerning the probability of any permanent disability:

Q: Now, Doctor, what is osteoarthritis, while we're on that subject?
A: That's degeneration in the bone where there is overgrowth of soft bone to become hard bone, and people get spurs and narrowing of disc space. It's a degenerative process.

. . . . .

A: Doctor, can you get osteoarthritis by trauma?
A: Well, trauma can precipitate.
Q: All right. Can trauma exacerbate or make worse a pre-existing osteoarthritic condition?
A: It can.

. . . . .

Q: Did you make a diagnosis of injuries, if any, that Mr. Sanders received in the accident in March of 1989?
A: I did.
Q: And what was that?
A: Cervical myofascial strain, lumbar back strain, cerebral concussion, osteoarthritis aggravated by accident.

. . . . .

Q: Okay. And we've already explained what osteoarthritis is. Now, is osteoarthritis—if he was not having many symptoms from it initially before, and then after the accident, this started showing symptoms from osteoarthritis—assume that if you will. As he gets older, is he likely to have less pain or more pain?
A: Predicting the value of that, I really can't absolutely say, but the trauma will

aggravate or can aggravate the pre-existing arthritis condition, and it can be progressive.

. . . . .

Q: Did you make any recommendation to him yesterday as to what type doctors he needed to see?
A: Oh, yeah. I told Mr. Sanders there was no cure for his severe degeneration other than a total hip replacement.

. . . . .

Q: And what does that x-ray reveal?
A: The man has severe degenerative arthritis in the right hip. The whole hip space is gone compared to the other side. You can see a nice area here. It looks like he's even getting consistent development. He'll have worse pain as time goes on.

The only physician to testify as to the permanency or lack of permanency of plaintiff's injuries was Dr. Rentrop who testified that in his opinion, they were not permanent. Furthermore, in his answers to interrogatories, plaintiff admitted that no disability rating was ever requested of any physician:

> Interrogatory Number 10. If any doctor has assigned a disability rating to you, either on a temporary or on a permanent basis as a result of the accident, state the percentage or percentages and the name of the doctor assigning such a disability and whether such disability is temporary or permanent.
>
> Answer to Interrogatory Number 10. No rating has been requested of any physician. However, Dr. Avron Slutsky, M.D. has expressed an opinion that the accident injuries have aggravated an existing osteoarthritic condition.

While Dr. Slutsky did testify that the accident aggravated a pre-existing osteoarthritic condition in plaintiff, and that he needed a hip replacement, in early 1984 plaintiff was told that "x-rays are consistent with severe degenerative arthritis in the right hip, which will require a total joint replacement in the near future."

Plaintiff contends that in the case at bar lay testimony is sufficient to submit the question of the permanency of injuries to the jury. We disagree. As was stated in *Owens Illinois, Inc. v. Lane,* 576 S.W.2d 348, 350 (Tenn.1978): "The determination of the issue of permanency of all but the most obvious injuries, such as loss of a member, is peculiarly within the realm of scientific knowledge."

■ In cases such as these, whether or not plaintiff's injuries would be described as permanent is to be determined upon the testimony of properly qualified physicians and surgeons. *See Gulf Refining Co. v. Frazier,* 83 S.W.2d 285, 290 (Tenn.App. 1934).

In *Porter v. Green,* 745 S.W.2d 874 (Tenn.App.1987) the Middle Section of this Court held as follows:

[1] Where a physician testifies concerning the physical condition, his opinion must be reasonably certain both as to the cause of the physical condition and its future effects.

It is a well known rule of evidence a judgment cannot be based on conjecture; speculation or surmise, and in the case of *Nashville, C. & S.L.Ry. v. Reeves,* 25 Tenn.App. 359, 157 S.W.2d 851, the Court quoted with approval the following from Corpus Juris Secundum and American Jurisprudence:

" 'Testimony of a physician as to the probable effect of the injury is admissible, but it should show that such result is reasonably certain and not a mere likelihood or possibility.' 25 C.J.S. Damages § 149, pp. 799, 800; 17 C.J. 1035, sec. 329.

" 'To warrant a recovery for a permanent injury, the future effect of the injury must be shown with reasonable certainty. It is not necessary that the evidence show conclusively or without a shadow of a doubt that the injuries are permanent. But while absolute certainty should not be required, a mere conjecture, or even a probability, does not warrant the giving of damages for future disability which may never exist.' 15 Am.Jur. 486, §§ 75." [*Maryland Casualty Co. v. Young* ] 211 Tenn. [1, at] 5, 6, 362 S.W.2d [241, at] 243 [1962].

Testimony of experts as to the probable cause of injury should be subject to the same rules as applied supra in the case of probable effect of injury.

*Id.* at 877.

In short, no disability rating was given by Dr. Slutsky. Plaintiff's counsel never sought an answer from Dr. Slutsky as to whether plaintiff's condition was permanent in nature.

Our conclusion is bolstered by comments made by the trial court during a discussion following the court's charge of the jury, when counsel for plaintiff objected to the submission of the charge on permanent disability. When counsel for defendant voiced his objections concerning the permanency of injuries, the trial court stated: "I think you're right. I think I may have made a mistake on that." Nonetheless, the court let the charge stand. In our opinion, this was not only error but reversible error, and can only be corrected by reversing the judgment of the trial court and remanding this cause for a new trial, which we order.

## II. *OBJECTIONABLE CLOSING ARGUMENT*

■ Defendant contends that certain remarks made by plaintiff's counsel during closing argument to the jury were improper as well as prejudicial. Specifically, after detailing to the jury illustrations of certain of plaintiff's former activities which he contended that he no longer could do, plaintiff's counsel stated:

Now, they haven't put on a single iota of evidence to say that that's not true, and you can well bet that with the resources of Heiskell, Donelson—

Defense counsel: Your Honor, I would object to this as totally irrelevant to this lawsuit.

Plaintiff's counsel: It is not irrelevant, if your Honor please. I am allowed latitude in closing argument to suggest to them that with that size of a law firm

. . .

In a benchside conference outside the presence of the jury, the trial court sustained defendant's objection as to any remarks about defendant's law firm.

The above comments were made by plaintiff's counsel in his opening statements as part of closing argument. Following reply of defendant's counsel, in his closing argument the following comments were made by plaintiff's counsel:

MR. THOMAS: . . . There wasn't any ice on the road. This is March 21st, and if they were serious about that, there are ways that they would bring that evidence in that it sleeted on that day.

MR. TRAMMELL: Your Honor, again, I note my objection.

MR. THOMAS: Note them. Also, he could have demanded an independent examination of this man by another doctor if he wanted to, and there was no evidence that they did that, that they wanted that.

As can be observed, counsel for defendant objected as to the one statement but failed to do so as to the second one, relative to the obtaining of an independent medical examination of plaintiff. Following defendant's objection, counsel for plaintiff, rather than the court, "ruled" on the objection. The court never made any ruling, as it should have.

Counsel for defendant contends these remarks were inappropriate, unwarranted, and prejudicial, and that in light of the holding of this Court in *Guess v. Maury*, 726 S.W.2d 906 (Tenn.App.1986), we should find that these remarks influenced the jury and its verdict, hence a new trial should be granted.

We are of the opinion that the trial court was correct in advising counsel that he should omit any reference to the nature or size of defendant's law firm. We are also of the opinion that the other remarks complained of, made in plaintiff's closing argument, were inappropriate and unwarranted under the circumstances and certainly could have had some prejudicial effect upon the jury. The trial court should have sustained the objection as made by defendant's counsel, and should have given a curative instruction then and there. We make this observation in light of the fact that this case is being remanded for a new trial.

### III. THE SUDDEN EMERGENCY ISSUE

Defendant contends the trial court was in error in failing to give his proposed jury instruction concerning sudden emergency, notwithstanding the fact that there was testimony on which to base such a charge.

Defendant testified that it had begun sleeting about the time that he left home and that because of the sleet there was ice on the road, particularly in the area as he approached this intersection. He testified further that because of the ice on the road, when he applied his brakes he slid some forty yards into the intersection, striking plaintiff. It would appear from this testimony that it was sufficient to sustain a charge to the jury on the doctrine of sudden emergency. However, on re-direct examination by plaintiffs' attorney defendant was asked:

Q: No, my question is you didn't have your car under enough control with the sleeting conditions to come to a stop at that stop sign; that is right, isn't it?

A: Yes, I guess.

If the conduct of the party seeking a sudden emergency charge contributed to the emergency, he is not entitled to the charge. *Kowalski v. Eldridge*, 765 S.W.2d 746, 749 (Tenn.App.1988). Under these circumstances we are of the opinion that the trial court did not err in declining to give defendant's special request concerning the doctrine of sudden emergency.

The remaining issues raised are pretermitted. The judgment of the trial court denying defendant's motion for a new trial is reversed and the cause is remanded for a new trial in accordance with this opinion.

Costs in this cause on appeal are taxed to plaintiff, for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.