# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

TERRI DEMILT,

        Plaintiff/Appellee,

VS.

MARY MOSS, M.D.,

        Defendant/Appellant.

)
)
) Shelby Circuit No. 51669 T.D.
)
) Appeal No. 02A01-9611-CV-00283
)
)
)
)

FILED

December 10, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE GEORGE H. BROWN, JR., JUDGE

JERRY E. MITCHELL
JOHN H. DOTSON
THOMASON, HENDRIX, HARVEY,
JOHNSON & MITCHELL
Memphis, Tennessee
Attorneys for Appellant

AL. H. THOMAS
IRA M. THOMAS
THOMAS & THOMAS
Memphis, Tennessee
Attorneys for Appellee

**REVERSED AND REMANDED**

ALAN E. HIGHERS, J.

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

This is an appeal from a jury verdict in a medical malpractice case. The jury entered

a judgment in favor of the plaintiff in the amount of $250,000, and the trial court ordered a remittur in the amount of $95,000. Defendant appealed the judgment citing, *inter alia*, errors in jury instructions. For the reasons stated herein, we reverse and remand the cause to the trial court for a new trial.

**FACTS**

On March 31, 1992, Terri DeMilt (hereinafter, "Ms. DeMilt" or "Plaintiff") entered Methodist Hospital North in Memphis, Tennessee, for induction of labor and delivery of her fourth child. Dr. Penn Joe, an Ob-Gyn, had treated Ms. DeMilt throughout her pregnancy, and on March 31, Ms. DeMilt was cared for by both Dr. Joe and his partner, Dr. Mary Moss (hereinafter, "Dr. Moss" or "Defendant"), also an Ob-Gyn. Dr. Moss examined Ms. DeMilt throughout the day as her dilation increased, and by 5:00 P.M., Ms. DeMilt had reached a full dilation of 10 centimeters. At 6:00 P.M., Dr. Moss assessed the patient and determined that Ms. DeMilt could deliver the baby vaginally. Dr. Moss ordered a "sitting up" epidural for anesthesia and began the delivery procedure at 6:15 P.M. At 6:23 P.M., Ms. DeMilt delivered a 10 pound, 4 ounce baby following a fourth degree episiotomy performed by Dr. Moss.

Ms. DeMilt was discharged from the hospital a few days after the delivery, and on April 28, 1992, Dr. Joe examined her. At that time, Ms. DeMilt complained of "lower female pain, soreness, stomach soreness ... hemorrhoids, headaches and nerves." On June 5, 1992, DeMilt visited Dr. Vance Shappley for treatment of a recurring urinary tract infection and difficulty voiding her bladder. Dr. Shappley diagnosed her as having urethral stenosis, or narrowing of the urethra. In October, 1992, DeMilt was examined by Dr. Joseph DeFranco, Jr., because of her irregular and lengthened menstrual periods and difficulty with bowel movements. Subsequently, DeMilt visited Dr. Michael Thomas because of fecal incontinence.

On February 8, 1993, Ms. DeMilt filed this medical malpractice lawsuit against Methodist Hospital, Dr. Penn Joe, Dr. Mary Moss and Sherree Montgomery, R.N. In the

complaint, Ms. DeMilt alleged that the professional negligence of defendants in the delivery of the child resulted in injuries to her bladder and bowels. On June 14, 1994, the trial court granted the motion for summary judgment filed by Methodist Hospital and Sherree Montgomery, and on May 23, 1996, the trial court entered an order of voluntary non-suit as to defendant Dr. Penn Joe. The cause proceeded to trial in May, 1996, and the jury returned with a verdict for Ms. DeMilt for $250,000. The order on the jury verdict was entered on June 3, 1996. Thereafter, Dr. Moss timely filed a motion for a new trial or in the alternative a motion to alter or amend the judgment. On July 22, 1996, the trial court entered an order granting a remittur in the amount of $95,000, thereby reducing the total judgment to $155,000. Dr. Moss timely filed a notice of appeal on August 7, 1996, and the cause is properly before this Court for consideration.

Our review of a judgment based upon a jury verdict is governed by Rule 13(d) T.R.A.P. Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict.

## ISSUES

Appellant Moss has raised the following issues on appeal:

I. Whether the trial court erred in presenting an allegedly erroneous jury instruction regarding the permanency of Ms. DeMilt's injuries;

II. Whether the trial court erred in presenting an allegedly erroneous jury instruction regarding the aggravation of Ms. DeMilt's preexisting condition or disability;

III. Whether the Court erred in failing to charge the jury on all of the elements the plaintiff must prove to carry her burden of proof under the medical malpractice statute;

IV. Whether the trial court properly charged the jury on proximate causation;

V. Whether the trial court erred in failing to rule on defendant's motion for partial directed verdict at the close of all proof, or in the alternative, whether the trial court erred in effectively denying defendant's motion for partial directed verdict;

VI. Whether plaintiff's attorney improperly argued the plaintiff's demand to the jury in contradiction of the prohibition set out in T.C.A. § 29-26-117 (1980);

VII. Whether the trial court erred in denying defendant's motion for a mistrial based upon plaintiff's counsel's argument to the jury using excluded

3

testimony; and

VIII.  Whether the jury verdict was excessive and not supported by the evidence and whether the trial court's remittur was inadequate.

Appellee also has raised issues on appeal, and they are:

I.  Whether the trial court erred in granting a remittur of the jury's award in the amount of $95,000; and

II.  Whether the trial court erred in striking questions posed by plaintiff's counsel in deposition testimony of local expert witnesses which demonstrated bias and reluctance to testify on the part of deponents.

## DISCUSSION

**Whether the trial court erred in presenting an allegedly erroneous jury instruction regarding the permanency of Ms. DeMilt's injuries; and**

**Whether the trial court erred in presenting an allegedly erroneous jury instruction regarding the aggravation of Ms. DeMilt's preexisting condition or disability:**

Defendant asserts that Plaintiff failed to introduce evidence regarding both the permanency of her injuries and the aggravation caused to her preexisting conditions. Defendant asserts that as a result of such omission, the judgment should be reversed. In its instructions to the jury, the trial court stated:

> Again on the question of damages, I charge you that there has been evidence introduced before you upon the question of the effect upon the plaintiff due to the nature and permanency of her injuries. Now I charge you that to warrant a recovery for a permanent injury the future effect of the injury must be shown with reasonable certainty. It is not necessary that the evidence show conclusively or without a shadow of a doubt that the injuries are permanent or as to the effect upon the plaintiff, but while absolute certainty should not be required as to the effect of a permanent injury, a mere conjecture or even a probability does not warrant the giving of damages for future effects of disability which may never occur -- which may never exist.

> Now, ladies and gentlemen, there is nothing so certain as death and nothing so uncertain as life. You are not to presume from the offer of the mortality table that this lady will live a longer or shorter time than is shown by the table. That proof was offered to you as a guide along with the other evidence

offered and you should consider it as such when you come to consider this case after the court has concluded the charge.

Similarly, the trial court charged the jury in regard to the aggravation of Ms. DeMilt's preexisting condition as follows:

4

A person who has a condition or disability at the time of an injury is not entitled to recover damages therefor; however, she is entitled to recover damages for any aggravation of such preexisting condition or disability proximately resulting from the injury. This is true even if the person's condition or disability made her more susceptible to the possibility of ill effects than a normally healthy person would have been and even if a normally healthy person would not have suffered any substantial injury. Where a preexisting condition or disability is so aggravated, the damages as to such condition or disability are limited to the additional injury or harmed caused by the aggravation. However, if the preexisting condition caused no harm or disability before the accident, the defendant is responsible for all of the harm or disability caused by the accident even though it is greater because of the preexisting condition than it might otherwise have been.

Upon review of the record before the Court, we conclude that the record is lacking in testimony regarding the permanency of Plaintiff's injuries. While Tennessee law does not require that the evidence show conclusively or beyond a shadow of a doubt that the injuries are permanent, the future effect of an injury must be shown with reasonable certainty to warrant recovery. Porter v. Green, 745 S.W.2d 874, 878 (Tenn. App. 1987); Williams v. Daniels, 344 S.W.2d 555, 559 (Tenn. App. 1960).

The Tennessee Supreme Court held in Wilson v. Tranbarger, 402 S.W.2d 449, 461 (Tenn. 1965), that there must be evidence in the record to support an issue of fact before the jury may be charged as to the law on that issue. Specifically, the Court held,

It has been held time and again that: 'the instructions given by the judge to the jury should be directly applicable to the facts in evidence. There must be testimony tending to raise the question in order for an issue to be submitted to the jury. An instruction which assumes that there is evidence tending to prove certain facts, when there is no such evidence, is erroneous.'
Id. at 461. (Citations omitted).

It is well established that the determination of the issue of permanency of all but the most obvious injuries, such as loss of a member, is within the realm of scientific knowledge. Owens Illinois, Inc. v. Lane, 576 S.W.2d 348, 350 (Tenn. 1978); Sanders v. Johnson, 859 S.W.2d 329, 331 (Tenn. App. 1993). As the Sanders court noted, Tennessee does recognize an exception for "obvious injuries"; however, there has been no showing that Ms. DeMilt's injuries fit within the "obvious injuries" exception to

5

permanency.

The determination of whether plaintiff's injuries would be described as permanent should be made upon the testimony of qualified experts. <u>Sanders</u>, 859 S.W.2d at 332. DeMilt has demonstrated no evidence in the record regarding the permanency of her injuries, and we find that it is reversible error for the trial court to have charged that the jury might find whether the injuries were permanent in the absence of such evidence. <u>Sanders</u>, 859 S.W.2d at 332 (Tenn. App. 1993).

We decline to find, however, that the trial court committed reversible error in regard to its instruction on aggravation of Ms. DeMilt's preexisting conditions. We have examined the evidence and find that the record contains competent testimony from Dr. Ray Sexton who testified that Ms. DeMilt had a preexisting somatization disorder which could have been aggravated by the trauma of the childbirth and alleged medical malpractice on March 31, 1992. A jury may assign whatever weight it chooses to that testimony. Nonetheless, in light of this, we conclude that the trial court correctly charged the jury in regard to the issue of aggravation of a preexisting injury.

On appeal, Ms. DeMilt maintains that the trial court erred in excluding deposition testimony from various treating physicians and argues that said testimony is relevant to issues of permanency and aggravation of preexisting injuries. Upon review of Ms. DeMilt's arguments, we do not find that the trial court erred in excluding this testimony.

**Whether the Court erred in failing to charge the jury on all of the elements the plaintiff must prove to carry her burden of proof under the medical malpractice statute:**

Defendant has raised as the third issue the question of whether the trial court presented to the jury all the elements that the plaintiff must prove under the malpractice statute, T.C.A. § 29-26-115 (1980). That section states in pertinent part:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

6

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
T.C.A.§ 29-26-115(a)(1980).

Dr. Moss asserts that the trial court charged the jury on the elements of a general negligence claim and not on the elements of a medical malpractice claim as defined by statute. Moss asserts that under Street v. Calvert, 541 S.W.2d 576 (Tenn. 1976), the trial court is bound to instruct the jury upon every issue of fact and theory of the case raised by the pleadings and supported by the proof. In its jury charge, the trial court stated in pertinent part:

Where a defendant files a plea of general denial, as has been done in this case, or special pleas denying each and every material allegation of the plaintiff's case, then the law steps in and places upon the plaintiff the burden of supporting and making out her case upon every issue, every material issue in controversy by the greater weight or preponderance of the evidence.

Number one, that the defendant was negligent. Two, that the defendant's negligence was the proximate cause of the injuries and damages to the plaintiff. And, three, the nature and extent of the injuries claimed to have been suffered.

The trial court further charged the jury as follows:

In performing professional services for a patient, a physician or surgeon has the duty to have that degree of learning and skill ordinarily possessed by physicians and surgeons of good standing practicing in the same or similar locality and under similar circumstances. It is further the duty of a physician or surgeon to use the care and skill ordinarily exercised in like cases by reputable members of his or her profession practicing in the same or similar locality under similar circumstances and to use reasonable diligence and one's best judgment in the exercise of skill in the application of his or her learning in an effort to accomplish the purpose for which he or she is employed. A failure to do so is a form of negligence called malpractice.

A surgeon who holds herself out as a specialist in a particular field of medical science or limits her practice to a particular speciality has a duty to possess and exercise that degree of skill, care, and learning ordinarily possessed and exercised in similar cases by members of good standing of the profession

7

who specialize in the same field of medicine and practice in the same or similar locality.

A physician or surgeon is not negligent simply because her efforts prove unsuccessful. It is possible for a physician or a surgeon to err in judgment or to be unsuccessful in her treatment without being negligent. By undertaking treatment she does not guarantee a good result, but she is responsible for an injury to her patient resulting from her lack of the requisite knowledge and skill and for her failure to exercise reasonable care or to use her best judgment.

. . . . .

You must determine the standard of professional learning, skill, and care required of the defendant only from the opinions of the physicians and surgeons including the defendant who have testified as expert witnesses about that standing....

T.C.A. § 29-26-115(a) requires that a plaintiff prove (1) the applicable standard of acceptable professional practice; (2) that defendant failed to adhere to that standard; and (3) that the plaintiff suffered injuries that would not otherwise have occurred but for the defendant's failure. It appears to the Court that the trial court, in its jury instructions, covered the necessary factors under T.C.A. § 29-26-115(a). As noted by this Court in Hurst by Hurst v. Dougherty, 800 S.W.2d 183 (Tenn. App. 1990), the specific portion of the charge complained of must be viewed in context, and although the charge must be substantially accurate, it need not be perfect in every detail. Id. at 186; See also, Mitchell v. Smith, 779 S.W.2d 384 (Tenn. App.1989). The jury instructions, when fully considered, meet the requirements of T.C.A. § 29-26-115(a). In addition to meeting the requirements of subsection (a), the jury must also be charged in regard to T.C.A. § 29-26-115(d) (1980) which expressly states:

(d) In a malpractice action as described in subsection (a) of this section, the jury shall be instructed that the claimant has the burden of proving, by a preponderance of the evidence, the negligence of the defendant. The jury shall be further instructed that injury alone does not raise a presumption of the defendant's negligence.
T.C.A. § 29-26-115(d) (1980).

In making the jury charge, the trial court stated in relevant part:

Where a defendant filed a plea of general denial, as has been done in this case, or special pleas denying each and every material allegation of the plaintiff's case, then the law steps in and places upon the plaintiff the burden of supporting and making out her case upon every issue, every material issue in

8

> controversy by the greater weight or preponderance of the evidence.
>
> Number one, that the defendant was negligent. Two, that the defendant's negligence was the proximate cause of the injuries and damages to the plaintiff. And, three, the nature and extent of the injuries claimed to have been suffered.
> (Emphasis Added).
> . . . . .
>
> The court further instructs you, ladies and gentlemen of the jury, that the greater weight or the preponderance of the evidence in the case is not alone determined by the number of witnesses testifying to a particular fact or to a particular state of facts but rather depends on the weight, credit, and value of the total evidence on either side of the issue and of this, you, jurors, are the exclusive judges.
>
> The term preponderance of the evidence means the amount of factual information presented to you in this trial which is sufficient to cause you to believe that the allegation is probably true. In order to preponderate, the evidence must have the greater convincing effect in the formation of your belief....
> (Emphasis Added).

It appears to the Court that the trial court correctly instructed the jury in regard to the first part of subsection (d), requiring that the jury be instructed that the plaintiff must prove the defendant's negligence by a preponderance of the evidence. However, we find that the trial court incorrectly instructed the jury in regard to the second part of subsection (d), which requires that the jury be charged that the injury does not raise a presumption of negligence. The Court stated:

> A physician or surgeon is not negligent simply because her efforts prove unsuccessful. It is possible for a physician or a surgeon to err in judgment or to be unsuccessful in her treatment without being negligent. By undertaking treatment she does not guarantee a good result, but she is responsible for an injury to her patient resulting from her lack of the requisite knowledge and skill and for her failure to exercise reasonable care or to use her best judgment.

While the instruction might suggest to one that a physician is not negligent simply because there is an injury, we do not find that the instruction meets the express requirements of the statute which requires that the jury be instructed that they are not to presume negligence simply because of the existence of an injury. In light of the foregoing, we are forced to conclude that the trial court's jury instructions were in error.

9

**Whether the trial court properly charged the jury on proximate causation:**

Defendant asserts that the trial court erred in its charge to the jury in regard to proximate causation. During a break in the proceedings, Defendant's attorney informed the trial court that it had not given the proper charge on proximate causation. The Court then gave the following instruction:

> The law in Tennessee sets out two requirements to determine whether an act or omission was a proximate cause of an injury or damage. Number one, the conduct must have been a substantial factor in bringing about the harm being complained of. And, number two, the harm giving rise to the action could have been reasonably foreseen and anticipated. To be a proximate cause of an injury there is no requirement that the cause be the only cause, the last act or the one nearest to the injury so long as it is a substantial factor in producing the injury or damage.

Upon examination of the definition we find that the trial court committed no error in its charge to the jury on the definition of proximate causation. As the Tennessee Supreme Court held in <u>McClenahan v. Cooley</u>, 806 S.W.2d 767, 775 (Tenn. 1991), "[T]here is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result." <u>Id.</u> at 775. While the trial court's definition of proximate causation was not that propounded by the Tennessee Pattern Jury Instructions as Defendant asserts it should have been, it appears to this Court that the definition of

proximate causation is that approved by our Supreme Court. Accordingly, we find no error in this regard.

**Whether plaintiff's attorney improperly argued the plaintiff's demand to the jury in contradiction of the prohibition set out in T.C.A. § 29-26-117; and**

**Whether the trial court erred in denying defendant's motion for a mistrial upon plaintiff's counsel's argument to the jury using excluded testimony:**

Dr. Moss asserts that Ms. DeMilt's counsel committed reversible error in his closing argument to the jury when he referred to the demand. Specifically, counsel stated:

> So then, you have to decide, you have to decide what is something like this worth. And there is nobody you can go to.

10

> Well, number one, you start out with it has been four years since this happened to her and so you can decide, well for those four years I think she ought to have $50,000.00 a year. You may pick more, you may pick less....

T.C.A. § 29-26-117 (1980), sets forth the parameters regarding the admissibility of a plaintiff's demands. That section states:

> In a medical malpractice action the pleading filed by the plaintiff may state a demand for a specific sum, but such demand shall not be disclosed to the jury during a trial of the case; notwithstanding the provisions of § 20-9-302 to the contrary.
> T.C.A. § 29-26-117 (1980).

In the ad damnum section of her complaint, Ms. DeMilt made the following prayer for relief:

> WHEREFORE PLAINTIFF demands judgment for compensatory damages against the Defendants in the amounts as follows:
> 1.      Compensatory damages for pain and suffering - both physical and mental - and medical expenses as to Plaintiff Terri DeMilt in the amount of TEN MILLION DOLLARS ($10,000.000.00).

Review of the record on appeal reveals that Ms. DeMilt's counsel stated in his closing argument to the jury:

> Now, this being a medical malpractice action, our legislature some years ago passed a rule that in a medical malpractice

> case the lawyer can't tell you how much he is suing for, so I can't tell you how much we are suing for.

The lawyer then went on to present the argument cited above which contained the reference to an award of $50,000 annually. In Guess v. Maury, 726 S.W.2d 906 (Tenn. App. 1986), this Court addressed a similar situation to that in the instant case. In that case, the attorney's reference to the action as a "multi-million dollar" case was in direct contravention of the trial court's order to the contrary, and this Court held that such action was, *inter alia*, grounds for a new trial. Id. at 920. As in Guess, the attorney's reference to a dollar figure in his closing argument in this case likely had its effect upon the jury because the suggestion of $50,000 annually in damages for the previous four years is quite close to the $250,000 amount of damages that the jury actually awarded. Obviously,

11

DeMilt's attorney did not violate the letter of the law by stating the exact figure contained in the ad damnum clause. However, upon consideration of the foregoing, we conclude that this is a further reason for a new trial.

Dr. Moss submits that DeMilt's counsel compounded his misconduct by using excluded testimony when making his closing argument to the jury and that the trial court erred in denying a mistrial upon said basis. Prior to the trial, the trial court had ordered that certain evidence be excluded from evidence, including a part of Dr. Joseph DeFranco's deposition dealing with Ms. DeMilt's diabetes. Plaintiff's counsel read from the transcript of Dr. DeFranco's excluded testimony during the rebuttal on closing argument . In reading the excluded testimony to the jury, Plaintiff's counsel allegedly violated the order in limine[1]. Following closing arguments, the trial court instructed the jury not to consider the part of the deposition testimony read to them by Plaintiff's counsel. Dr. Moss asserts that said instruction was insufficient to cure the harm done when the excluded testimony was read to the jury. We disagree.

While it was error for Plaintiff's counsel to read from the excluded testimony, we decline to find that the error was of such magnitude to warrant granting a mistrial. Upon review of the entire record, we find that during closing argument, it was Dr. Moss' counsel who first broached the subject of Ms. DeMilt's diabetes by reading from Dr. Thomas' deposition testimony. Plaintiff's counsel merely sought to rebut said argument. We find that the inadvertent introduction of six lines of excluded testimony from Dr. DeFranco was harmless and was cured by the trial court's subsequent instruction to the jury. Accordingly, we find that the trial court did not err in denying Dr. Moss' motion for a mistrial.

**Whether the trial court erred in striking questions posed by plaintiff's counsel in deposition testimony of local expert witnesses which demonstrated bias and reluctance to testify on the part of deponents:**

On appeal, Ms. DeMilt has raised as an issue the question of whether the trial court erred in striking questions posed by her attorney to Dr. Moss' expert witnesses which

_____

[1] We note that the order in limine to which the parties refer is not contained in the record on appeal. However, because both parties agreed upon the existence and terms of the order and because the trial court acted to enforce the order, we will consider this issue on appeal.

DeMilt claims show bias on the part of the deponents. Specifically, Ms. DeMilt argues that she should have the opportunity to demonstrate to the jury that a physician witness may be biased because he or she is insured by the same carrier as the defendant. Evidently, Dr. Moss and four of her expert witnesses are insured by the same company.

This Court has addressed this issue on numerous occasions and has concluded that it is not error for a trial court to exclude testimony on the issue of insurance coverage. Patton v. Rose, 892 S.W.2d 410 (Tenn. App. 1994); Roberson v. Netherton, No. 01A01-9310-CV-00470 (Tenn. App. May 4, 1994). Plaintiff asserts that she should have been allowed to introduce this evidence to show bias or prejudice on the part of the witness testifying in favor of the defendants. Admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion. From our examination of this record, we cannot say that the trial court abused its discretion by excluding the evidence. Patton v. Rose, 892 S.W.2d 410, 414-15 (Tenn. App. 1994). Trial courts have broad discretion in ruling on evidentiary matters, and in the absence of a clear abuse of discretion, the trial court's decision will not be overturned on appeal.

In light of the foregoing disposition of the issues in this cause, we do not find it necessary to address the remaining issues raised by the parties because such issues have been pretermitted. The judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial. Costs are adjudged against the plaintiff/appellee, for which execution may issue, if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

13

FARMER, J.