IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 14, 1999 Session

## RANDALL DEWAYNE HENLEY, ET AL. v. RUSSELL DALE AMACHER, ET AL.

Appeal from the Circuit Court for Franklin County
No. 9780-CIV     Buddy D. Perry, Judge

No. M1999-02799-COA-R3-CV - Filed January 28, 2002

This appeal involves an early morning, drunken joyride by four teenagers that ended when their sport utility vehicle overturned. One of the passengers who was injured when he was thrown from the vehicle sued the driver and his father in the Circuit Court for Franklin County seeking $200,000. A jury assessed the passenger's damages and attributed 75% of the fault to the driver and 25% of the fault to the passenger. In accordance with the jury's verdict, the trial court awarded the passenger a $34,125 judgment against the driver and his father. On this appeal, the driver and his father take issue with (1) the allocation of less than 50% of the fault to the passenger, (2) the lack of evidence to support the application of the family purpose doctrine, (3) the awards for permanent impairment and future medical expenses, and (4) the trial court's refusal to give two requested instructions. We have determined that the only reversible error in the proceeding involves the jury's decision to award the passenger $20,000 for future medical expenses. Accordingly, we affirm the jury's verdict as to liability and allocation of fault. With regard to the damage award, we suggest a remittitur which, if accepted, will reduce the passenger's judgment to $19,125.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Paul Campbell, Jr., Chattanooga, Tennessee, for the appellants, Kenneth D. Amacher and Russell Dale Amacher.

Robert S. Peters, Winchester, Tennessee, for the appellees, Randall Dewayne Henley and Deborah Henley.

## OPINION

### I.

In mid-1995, Russell Dale ("Rusty") Amacher and his brother, Chris Amacher, were living in Franklin County with their grandmother because their parents were going through a divorce. Although he was only sixteen, Mr. Amacher had received institutionalized treatment for alcohol abuse on two occasions. Relations between Rusty Amacher and his parents had become strained.

On the night of June 27, 1995, Rusty Amacher borrowed his brother's 1987 GMC Jimmy and picked up Randall DeWayne Henley at approximately 7:00 p.m. Mr. Henley, then seventeen years old, had been friends with Mr. Amacher since the seventh grade and knew about Mr. Amacher's struggle with alcohol. The two boys decided that they were "going to hang out the whole night." Accordingly, they began the evening by obtaining a pint of Fighting Cock whiskey and driving to Al Tripp's house where they drank the whiskey and chased it with a soft drink.

After stopping by a young lady's house in Tullahoma, the two boys drove to Jeremy Bryant's house in Estill Springs. They stopped along the way to purchase a case of beer. When they arrived at Mr. Bryant's house at approximately 3:00 a.m. on June 28, 1995, they discovered that another friend, Charlie Tawater, was also there. Messrs. Bryant and Tawater were seventeen years old. Messrs. Amacher and Henley awakened Messrs. Bryant and Tawater, and the four boys sat around talking and drinking beer until approximately 5:30 a.m. Messrs. Bryant and Tawater each consumed two or three beers, and Messrs. Amacher and Henley consumed the rest of the case.

Some time before daylight, the boys decided to go horseback riding. Messrs. Bryant and Tawater, sensing that Mr. Amacher was intoxicated, offered to drive, and a discussion ensued about which of the boys would drive. When Mr. Amacher insisted that he was able to drive, his three friends acquiesced because he was providing the car. Accordingly, the boys set out from Mr. Bryant's house with Mr. Amacher driving, Mr. Henley in the front passenger's seat, and Messrs. Bryant and Tawater in the rear seat.

Just over one mile beyond the city limits of Estill Springs, Mr. Amacher's erratic driving prompted Mr. Bryant to demand that he pull over and stop the car. When Mr. Amacher turned around to talk with Mr. Bryant, he drove the car off the road. When he attempted to return to the roadway, Mr. Amacher overcorrected and caused the vehicle to overturn. Mr. Henley was thrown from the car and seriously injured the ligaments in his right knee. A test of the alcohol in a sample of Mr. Amacher's blood taken a short time later revealed a blood alcohol content of .24%.[1]

Mr. Henley had his injured knee surgically reconstructed in August 1995. In June 1996, he and his mother[2] filed suit against Mr. Amacher and his father seeking $200,000 in damages for the injuries he sustained when the was thrown from the vehicle in June 1995. Mr. Amacher and his father denied liability, asserting that Mr. Henley was aware of Mr. Amacher's intoxication and that Mr. Henley had assumed the risk of riding with Mr. Amacher. Mr. Amacher's father also asserted that he was not liable because he had not consented to his son's use of the vehicle and because his son was not using the vehicle for a family purpose on the morning of June 28, 1995.

Following a trial in October 1998, a jury determined that Mr. Amacher had been driving the vehicle for a family purpose on June 28, 1995. The jury determined that Mr. Henley's damages

---

[1] A person's ability to drive is presumed to be sufficiently impaired to constitute a violation of Tenn. Code Ann. § 55-10-401(a)(1) (1998) if the alcohol content in the person's blood at the time is "ten-hundredths of one percent (.10%) or more." Tenn. Code Ann. § 55-10-408(a) (1998).

[2] Mr. Henley's mother joined him as a plaintiff because he was a minor when the suit was first filed. By the time of trial, Mr. Henley had reached the age of majority and his mother voluntarily dismissed her claim.

amounted to $45,500,[3] that Mr. Amacher was 75% at fault, and that Mr. Henley was 25% at fault. Accordingly, the trial court entered a judgment against Mr. Amacher and his father for $34,125.[4] After moving unsuccessfully for a new trial, Mr. Amacher and his father perfected this appeal.

## II.
### THE REQUESTED JURY INSTRUCTIONS

We turn first to the assertion by Mr. Amacher and his father that the trial court erred by refusing to give two requested instructions regarding a passenger's obligation to protect his or her own safety when the operator of a motor vehicle is intoxicated. These proposed instructions, based on cases predating the Tennessee Supreme Court's adoption of its system of modified comparative fault, essentially instructed the jury that a passenger who knowingly rode with an intoxicated driver was solely responsible for his or her own injuries. We have determined that the trial court correctly declined to give these instructions.

### A.

The chief defense of Mr. Amacher and his father to Mr. Henley's complaint for damages was that Mr. Henley was solely responsible for the injury he sustained on June 28, 1995, because he decided to ride in a motor vehicle being driven by a person he knew to be intoxicated. Accordingly, Mr. Amacher and his father requested the trial court to include two specific instructions in its charge to the jury. The first requested instruction was:

> I instruct you that the law of Tennessee is that when one gets into an automobile which is to be operated by a drunken driver, such person takes his life in his hands.

The second requested instruction was:

> I instruct you that the law of Tennessee is that as a general proposition, a guest-passenger is precluded from recovering for injuries sustained in an automobile accident where the intoxicated condition of the driver of the automobile in which the passenger was riding was the proximate cause of the accident, if the guest-passenger knew or should have known of the driver's intoxication at the time the guest-passenger volunteered to ride in the automobile.
>
> Whether or not the guest passenger is contributorily negligent in riding in the automobile of the defendant is not to be determined on the circumstances as they appear to the guest-passenger, but is to be determined by comparing the guest-passenger's conduct with that of an ordinarily prudent man under the circumstances.

---

[3]Specifically, the jury awarded Mr. Henley $19,000 for past medical expenses, $20,000 for future medical expenses, $1,500 for past pain and suffering, and $5,000 for permanent impairment.

[4]$45,500 \times 75\% = $34,125.

The trial court declined to give these requested instructions. It concluded that "the charge straight from the charge book that defines the obligation of a guest passenger in a vehicle" was adequate and thus refused to "inject specific facts into . . . my charge." Accordingly, the trial court instructed the jury, in part, that:

> In summary, both Randall Henley and Russell Amacher had a duty to exercise reasonable care with regard to the actual and potential dangers existing from the weather, the road, the traffic, and other conditions, including their personal conditions, and to follow the traffic laws as I have instructed you.
>
> Now, a passenger has a duty to take action for self protection from danger only if, number one, when it is apparent that the passenger can no longer rely upon the driver for protection as when the driver's conduct shows incompetence to drive or when the driver is unmindful and does not know of a danger known to the passenger, and, number two, if the passenger becomes aware of the danger at a time and under a circumstance when the passenger could have prevented the harm.[5]

On this appeal, Mr. Amacher and his father assert that their requested instructions were correct statements of the law and that they were applicable to the evidence that had been presented. Accordingly, they assert that they were prejudiced by the trial court's refusal to give these instructions.

**B.**

Juries have the exclusive prerogative to decide all of the disputed factual issues submitted to them based on the legal principles provided by the trial court. *Ingram v. Earthman*, 993 S.W.2d 611, 635 (Tenn. Ct. App. 1998); *Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 93 (Tenn. Ct. App. 1996). The trial court's instructions are the sole source of the legal principles to be used by the jury to guide its deliberations. *State ex rel. Myers v. Brown*, 209 Tenn. 141, 148-49, 351 S.W.2d 385, 388 (1961); *Grissom v. Metropolitan Gov't*, 817 S.W.2d 679, 685 (Tenn. Ct. App. 1991). Thus, the soundness of every jury's verdict rests on the fairness and accuracy of the trial court's instructions. *Ladd v. Honda Motor Co.*, 939 S.W.2d at 94.

A trial court's instructions must be complete and accurate and must fairly reflect the parties' claims and defenses. *Cole v. Woods*, 548 S.W.2d 640, 642 (Tenn. 1977); *Washington v. 822 Corp.*, 43 S.W.3d 491, 493 (Tenn. Ct. App. 2000); *Hughes v. Lumbermens Mut. Cas. Co.*, 2 S.W.3d 218, 226 (Tenn. Ct. App. 1999). Accordingly, trial courts should carefully consider each jury instruction proposed by the parties and should grant any requested instruction (1) if it is supported by the evidence, (2) if it embodies a theory actually relied upon during the trial by the requesting party, (3) if it is a correct statement of the law, and (4) if its substance is not already contained in another portion of the charge. *Richardson v. Miller*, 44 S.W.3d 1, 27 (Tenn. Ct. App. 2000); *Ladd v. Honda*

---

[5]This portion of the charge conforms substantially to T.P.I. 3- Civil 5.30 (3d ed. 1997).

*Motor Co.*, 939 at 102-03. However, they may appropriately decline to give a requested instruction (1) if it is not supported by the evidence, (2) if its substance is already covered in the charge, and (3) if it is incorrect or incomplete in any respect. *Ingram v. Earthman*, 993 S.W.2d at 636.

A trial court's instructions should be viewed as a whole. *In re Estate of Elam*, 738 S.W.2d 169, 174 (Tenn. 1987); *Abbott v. American Honda Motor Co.*, 682 S.W.2d 206, 209 (Tenn. Ct. App. 1984). We do not expect these instructions to be perfect in every way, *In re Estate of Elam*, 738 S.W.2d at 174; *Ingram v. Earthman*, 993 S.W.2d at 636, and we will not invalidate instructions if they fairly define the legal issues in the case and do not mislead the jury. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992); *Woods v. Herman Walldorf & Co.*, 26 S.W.3d 868, 878 (Tenn. Ct. App. 1999); *Hughes v. Lumbermens Mut. Cas. Co.*, 2 S.W.3d at 225. When the denial of a requested instruction that could have been given prejudices the rights of the party who requested the instruction, this court must vacate the judgment. *Nashville, C. & St. L. Ry. v. Jackson*, 187 Tenn. 202, 206-07, 213 S.W.2d 116, 117 (1948); *Souter v. Cracker Barrel Old Country Store, Inc.*, 895 S.W.2d 681, 684 (Tenn. Ct. App. 1994).

## C.

The propriety of the trial court's refusal to give the instructions requested by Mr. Amacher and his father requires us to revisit the effects of the Tennessee Supreme Court's adoption of the current system of modified comparative fault. Prior to the advent of modified comparative fault in 1992, a passenger who knowingly rode with an intoxicated driver could not, as a general matter, recover damages for injuries caused by the driver's negligence. The law considered these passengers to be taking their lives in their own hands, *Schwartz v. Johnson*, 152 Tenn. 586, 592, 280 S.W. 32, 33 (1926), and left them to live with the consequences of their decision to take a chance on the driver's ability to drive. *Hicks v. Herbert*, 173 Tenn. 1, 6, 113 S.W.2d 1197, 1199 (1938). Accordingly, the courts repeatedly held that either the doctrine of proximate contributory negligence or the doctrine of implied assumption of the risk prevented passengers who knowingly rode with an intoxicated driver from recovering damages from the driver. *Wilson v. Tranbarger*, 218 Tenn. 208, 227, 402 S.W.2d 449, 457 (1965) (recognizing the defenses of contributory negligence and assumption of the risk); *Harvey v. Wheeler*, 57 Tenn. App. 642, 646, 423 S.W.2d 283, 285 (1967) (recognizing the contributory negligence defense).[6]

The Tennessee Supreme Court's decision in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), imported the principles of comparative fault into our common law and heralded the demise of both the doctrine of contributory negligence and the doctrine of implied assumption of the risk. In *McIntyre*, the Court abandoned the common-law "all-or-nothing" doctrine of contributory

---

[6]Assumption of the risk and contributory negligence were distinct legal doctrines. *Wilson v. Moudy*, 22 Tenn. App. 356, 372, 123 S.W.2d 828, 838 (1938). Assumption of the risk requires actual knowledge of the danger and a conscious decision to submit to it. Contributory negligence, on the other hand, does not require actual knowledge of the danger but rather consists of conduct that departs from the reasonable standard of care. *Underwood v. Waterslides of Mid-America, Inc.*, 823 S.W.2d 171, 179 (Tenn. Ct. App. 1991). Even though the doctrines are distinct, they are entirely compatible. *Duncan v. Ferrell*, 58 Tenn. App. 133, 161, 427 S.W.2d 36, 48 (1967). In fact, by 1992, the doctrine of assumption of the risk had become the "practical equivalent" of the doctrine of contributory negligence. *Chattanooga Gas. Co. v. Underwood*, 38 Tenn. App. 142, 157, 270 S.W.2d 652, 659 (1954); *John Bouchard & Sons Co. v. Keaton*, 9 Tenn. App. 467, 481 (1928).

negligence as "outmoded and unjust" and signaled that the *McIntyre* decision would affect numerous other heretofore settled legal principles surrounding tort litigation. *McIntyre v. Balentine*, 833 S.W.2d at 56-57; *see also Conroy v. City of Dickson*, 49 S.W.3d 868, 872 (Tenn. Ct. App. 2001) (characterizing the *McIntyre* decision as one that "swept away the doctrine of contributory negligence and many of its ancillary doctrines").

Two years after deciding *McIntyre v. Balentine*, the Tennessee Supreme Court abandoned the doctrine of implied assumption of the risk, noting that: "[i]t would be ironic indeed if, after abolishing the all-or-nothing proposition of contributory negligence in *McIntyre*, we were to reinstate it here using the vehicle of assumption of risk." *Perez v. McConkey*, 872 S.W.2d 897, 905 (Tenn. 1994). Thus, instead of retaining the doctrine of implied assumption of the risk as a separate defense, the Court decreed that "the reasonableness of a party's conduct in confronting a risk should be determined under the principles of comparative fault." *Perez v. McConkey*, 872 S.W.2d at 905; *see also Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 91 (Tenn. 2000). It should now be beyond reasoned debate that the common-law doctrines of contributory negligence and implied assumption of the risk "no longer have any independent existence, and thus cannot be invoked to completely bar recovery by the plaintiff." *Eaton v. McLain*, 891 S.W.2d 587, 592 (Tenn. 1994). In the light of the *McIntyre* and *Perez* decisions, intoxicated drivers can no longer use these doctrines as a shield against damages suits brought by their passengers.

### D.

In light of the state of the law when this case was tried, there are two reasons why the trial court properly declined to give the special instructions requested by Mr. Amacher and his father. First, because the adoption of comparative fault eviscerated the doctrines of contributory negligence and implied assumption of the risk, a passenger who knowingly rides with an intoxicated driver is no longer precluded as a matter of law from recovering damages from the driver for injuries caused by the driver's negligence. Now, the reasonableness of the passenger's conduct in light of the known risk associated with riding in a vehicle driven by an intoxicated driver must be compared with the negligence of the intoxicated driver. Second, the trial court's general instruction involving a passenger's duty of self-protection correctly summarizes a passenger's duties and does not on its face mislead the jury. Accordingly, after reviewing the trial court's instructions as a whole, we decline to find that the trial court erred by declining to include the instructions requested by Mr. Amacher and his father in its charge to the jury.

### III.
#### THE APPORTIONMENT OF FAULT BETWEEN MESSRS. HENLEY AND AMACHER

Next, Mr. Amacher and his father argue that the jury erred by allocating only 25% of the fault to Mr. Henley. They insist that Mr. Henley's own evidence demonstrates overwhelmingly that he failed to use reasonable care to protect himself and that he was "guilty of more than 50% fault." Therefore, they argue that there is no evidence to support the jury's decision to allocate less than 50% of the fault to Mr. Henley. This argument misapprehends the role of courts and juries in the current system of modified comparative fault.

### A.

In addition to being governed by the substantive principles of comparative fault, an intoxicated driver's defenses based on his or her passenger's negligence must comply with comparative fault's procedural principles. Chief among these procedural principles is that in a vast majority of cases, the comparison and allocation of fault is a question of fact to be decided by the finder-of-fact, that is the jury or the trial court sitting without a jury. *Brown v. Wal-Mart Discount Cities*, 12 S.W.3d 785, 789 (Tenn. 2000); *Turner v. Jordan*, 957 S.W.2d 815, 824 (Tenn. 1997); *Prince v. St. Thomas Hosp.*, 945 S.W.2d 731, 735 (Tenn. Ct. App. 1996). The task of comparing and allocating fault may be taken from the jury only when it can be determined beyond question (or alternatively, when reasonable minds cannot differ) that the plaintiff's fault is equal to or greater than the defendant's. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d at 91-92; *Eaton v. McLain*, 891 S.W.2d at 589; *Kim v. Boucher*, 55 S.W.3d 551, 556-57 (Tenn. Ct. App. 2001).

The procedural avenues for obtaining a decision that the plaintiff's fault exceeds the defendant's as a matter of law are governed by the Tennessee Rules of Civil Procedure. On one hand, a disputed comparative fault question will generally be submitted to the jury. The question may also be raised using (1) a motion for summary judgment under Tenn. R. Civ. P. 56, (2) a motion for directed verdict governed by Tenn. R. Civ. P. 50.01, and (3) a post-trial motion for a judgment as a matter of law governed by Tenn. R. Civ. P. 50.02.[7] *Coln v. City of Savannah*, 966 S.W.2d 34, 44 (Tenn. 1998); *Norris v. Pruitte*, No. 01A01-9709-CV-00506, 1998 WL 1988563, at *3 (Tenn. Ct. App. Aug. 24, 1998) (No Tenn. R. App. P. 11 application filed).

The courts' prerogatives regarding the allocation of fault become more circumscribed once the question of fault has been submitted to and decided by the jury. While the trial courts retain the power to grant additurs and remittiturs with regard to the jury's assessment of the damages, they cannot adjust the jury's allocation of fault in any way. *Turner v. Jordan*, 957 S.W.2d at 824; *Fye v. Kennedy*, 991 S.W.2d 754, 762 (Tenn. Ct. App. 1998). Appellate courts are governed by the same restrictions, *Winstead v. Goodlark Reg'l Med. Ctr., Inc.*, No. M1997-00209-COA-R3-CV, 2000 WL 343789, at *6 (Tenn. Ct. App. Apr. 4, 2000) (No Tenn. R. App. P. 11 application filed); *Allen v. Payne*, No. 03A01-9903-CV-00067, 1999 WL 1076922, at *1 (Tenn. Ct. App. Nov. 30, 1999) (No Tenn. R. App. P. 11 application filed), and by the standards of review applicable to jury verdicts.

**B.**

The standards for reviewing a jury's allocation of fault to negligent parties ought to be straightforward. Because allocating fault is essentially a fact question,[8] one would assume that the appellate courts would review a jury's fault allocation using Tenn. R. App. P. 13(d)'s familiar standard of review for findings of fact by juries in civil actions. Under Tenn. R. App. P. 13(d), the reviewing courts would be able to set aside a jury's allocation of fault and grant a new trial only if there is no material evidence to support the verdict. Appellate courts have, in fact, employed Tenn.

---

[7]This motion is commonly referred to as a motion for a judgment notwithstanding the verdict or a motion for a jnov.

[8]*Staples v. CBL & Assocs., Inc.*, 15 S.W.3d at 92 (vacating a summary judgment concluding that the plaintiff was more than 50% at fault because "a jury should have decided the questions of fact relevant to . . . [the fault] issue."); *Howard v. Norwood*, No. M1999-00838-COA-R3-CV, 2000 WL 679228, at *8 (Tenn. Ct. App. May 25, 2000) (No Tenn. R. App. P. 11 application filed); *LaRue v. 1817 Lake, Inc.*, 966 S.W.2d 423, 427 (Tenn. Ct. App. 1997).

R. App. P. 13(d)'s standard to review allocations of fault by juries[9] and by trial courts sitting without juries.[10]

In 1995, the Tennessee Supreme Court appeared to introduce a second, less familiar, standard of review for fault allocations in a case where the Court disagreed with a trial court's allocation of fault following a bench trial. Citing a decision by the Supreme Court of Minnesota involving a jury's allocation of fault, the Court stated:

> Although it is true that the trier of fact has considerable latitude in allocating percentages of fault to negligent parties, . . . appellate courts may alter those findings if they are clearly erroneous.

*Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). Both the Tennessee Supreme Court and this court have since employed this so-called "clearly erroneous" standard to review allocations of fault by juries,[11] as well as allocations of fault by trial courts following bench trials.[12]

Five years after deciding *Wright v. City of Knoxville*, the Tennessee Supreme Court decided to expressly limit the application of its freshly minted "clearly erroneous" standard to jury trials. The vehicle the Court chose was an appeal in another non-jury case in which this court had affirmed the trial court's allocation of 100% of the fault to the defendant on the ground that the trial court's decision was not "clearly erroneous." Instead of concluding that the trial court's allocation of fault had, in fact, been clearly erroneous, the Court announced that its *Coln v. Savannah* decision should be "clarified" and that henceforth, "the clearly erroneous language of *Wright v. City of Knoxville* . . . [should be] limited to jury cases." *Cross v. City of Memphis*, 20 S.W.3d at 645. Applying Tenn. R. App. P. 13(d)'s standard of review, the Court concluded that the evidence preponderated against the trial court's allocation of fault and allocated 20% of the fault to the plaintiff.

The unanswered questions arising from the Tennessee Supreme Court's invocation of the "clearly erroneous" standard to review a jury's allocation of fault place the lower courts and the litigants in a quandary. Did the Court intend to adopt two standards of review? If the Court did intend to adopt two standards of review, what sort of review does the "clearly erroneous" standard

---

[9] *Turner v. Jordan*, 957 S.W.2d at 824; *Moss v. Sankey*, 54 S.W.3d 296, 299 (Tenn. Ct. App. 2001); *Milliken v. Crye-Lieke Realtors*, No. M1999-00071-COA-R3-CV, 2001 WL 747638, at *9 (July 5, 2001), *perm. app. denied*, (Tenn. Dec. 10, 2001); *Moore v. Johnson*, No. E2000-00385-COA-R3-CV, 2000 WL 1424930, at *2 (Tenn. Ct. App. Sept. 26, 2000), *perm. app. denied*, (Tenn. Mar. 19, 2001); *Fox v. Food Lion, Inc.*, No E1911-00015-COA-R3-CV, 2000 WL 1424805, at *4 (Tenn. Ct. App. Sept. 21, 2000) (No Tenn. R. App. P. 11 application filed).

[10] *Cross v. City of Memphis*, 20 S.W.3d 642, 643 (Tenn. 2000); *Varner v. Perryman*, 969 S.W.2d 410, 411 (Tenn. Ct. App. 1997).

[11] *Taggart v. Richards*, No. 03A01-9707-CV-00262, 1997 WL 677954, at *2 (Tenn. Ct. App. Nov. 3, 1997), *perm. app. denied*, (Tenn. May 26, 1998).

[12] *Coln v. City of Savannah*, 966 S.W.2d at 44; *Niedergeses v. Giles County*, No. M2000-00428-COA-R3-CV, 2001 WL 747647, at *1 (Tenn. Ct. App. July 5, 2001) (No Tenn. R. App. P. 11 application filed); *Griggs v. Mixon*, No. 02A01-9504-CV-00087, 1996 WL 444104, at *4 (Tenn. Ct. App. Aug. 6, 1996) (No Tenn. R. App. P. 11 application filed); *Nichols v. Metropolitan Gov't*, No. 01A01-9509-CV-00393, 1996 WL 387901, at *7 (Tenn. Ct. App. July 12, 1996) (No Tenn. R. App. P. 11 application filed).

envision and how does this standard differ from Tenn. R. App. P. 13(d)'s material evidence standard? Does the Court envision the application of both standards in each case? If not, what criteria should be used to determine which of the two standards to use in a particular case? After carefully reviewing *Wright v. City of Knoxville*, *Coln v. City of Savannah*, and *Cross v. City of Memphis*, we have determined that the Tennessee Supreme Court did not intend to depart from the material evidence standard of review in Tenn. R. App. P. 13(d) when it first used the term "clearly erroneous" in *Wright v. City of Knoxville*.

The "clearly erroneous" standard of review plays a significant role in appellate jurisprudence in the federal courts and the courts of many other states. Because the Seventh Amendment prevents federal appellate courts from relitigating facts found by a jury, *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 358-59, 82 S. Ct. 780, 783 (1962), all that federal appellate courts can do is to determine whether there is any competent and substantive evidence in the record that tends to support the verdict. *Mortensen v. United States*, 322 U.S. 369, 374, 64 S. Ct. 1037, 1040 (1944). Substantive evidence is evidence adequate to support the jury's conclusion even if it is also possible to draw a contrary conclusion from the same evidence. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).

Federal appellate courts do not lightly disturb jury verdicts. *McGill v. Munoz*, 203 F.3d 843, 845 (D.C. Cir. 2000). They do not weigh the evidence, but rather they determine whether a fair-minded juror could reach the verdict rendered. *Williams v. First Gov't Mortgage & Inv. Corp.*, 225 F.3d 738, 744 (D.C. Cir. 2000). Accordingly, federal appellate courts can overturn a jury verdict on evidentiary grounds only when there is a complete absence of probative facts to support the conclusions reached by the jury. *Dennis v. Denver & Rio Grande W. R.R.*, 375 U.S. 208, 210, 84 S. Ct. 291, 293 (1963).

The Seventh Amendment does not place the same constraints to appellate review of the factual findings of a district court judge following a bench trial. Review of these decisions is governed by Fed. R. Civ. P. 52(a) which provides, in part, that

> [f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

More than fifty years ago, Judge Learned Hand noted the futility of attempting to define the "clearly erroneous" concept precisely. *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 433 (2d Cir. 1945). In an effort to clarify the standard, the United States Supreme Court later explained that

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74, 105 S. Ct. 1504, 1511 (1985). A federal appellate court, applying Fed. R. Civ. P. 52(a), will conclude that a district court judge's finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court reviews all the evidence and is "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948); *see also Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 318 (4th Cir. 2001); *Adams County Reg'l Water Dist. v. Village of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000).

The difference between the standards for reviewing a jury's verdict and a district court judge's findings of fact are probably easier to articulate than to implement. *McCarthy v. New York City Technical Coll. of City Univ. of N.Y.*, 202 F.3d 161, 168 n.1 (2d Cir. 2000) (Newman, J., concurring). However, the federal courts generally acknowledge that a jury's verdict is entitled to somewhat "more deference than a trial court's findings and thus that the clearly erroneous standard gives a reviewing court greater freedom than the substantive evidence standard. *Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 623, 113 S. Ct. 2264, 2280 (1993); Robert L. Stern, Note, *Review of Findings of Administrators, Judges and Juries: A Comparative Analysis*, 58 Harv. L. Rev. 70, 86 (1944). As Judge Hand noted, a reviewing court "will hesitate less to reverse the finding of a judge than that of . . . a jury." *United States v. Aluminum Co. of Am.*, 148 F.2d at 433.

We have determined that the Tennessee Supreme Court, by its use of the term "clearly erroneous" in connection with the review of a jury's allocation of fault, did not intend to replace Tenn. R. App. P. 13(d)'s standard for reviewing the evidentiary foundation of jury verdicts with the standard of review used by the federal appellate courts to review district court judges' findings of fact. In light of the fundamental nature of the right to trial by jury and the judiciary's obligation to guard and defend this right,[13] we are confident that the Tennessee Supreme Court did not intend to make it easier for Tennessee's judges to second-guess a jury's factual determinations regarding the fault of negligent parties.

The right to a jury trial, as it existed at common law, is the single most important contribution of Anglo-American jurisprudence. It is preserved and protected by Tenn. Const. art. I, § 6 and is one of the fundamental rights placed beyond legislative interference. *Tipton v. Harris*, 7 Tenn. (Peck) 414, 419-20 (1824). Accordingly, litigants in civil cases to which the right to a jury trial attaches have a constitutional right to have all disputed issues of fact decided by a jury. *Finks v. Gillum*, 38 Tenn. App. 304, 312, 273 S.W.2d 722, 726 (1954); *Morgan v. Tennessee Cent. Ry.*, 31 Tenn. App. 409, 422, 216 S.W.2d 32, 37 (1948).

Because of the constitutional dimension of the right to a jury trial, Tennessee's courts are reluctant to second-guess a jury's verdict. Their reluctance is reflected in Tenn. R. App. P. 13(d) which requires a reviewing court to examine the entire record to determine whether it contains any material evidence that supports the verdict. During this examination, the reviewing court may not weigh the evidence or make its own credibility determinations. *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994); *Moss v. Sankey*, 54 S.W.3d at 299. In addition, the reviewing

---

[13]*Caudill v. Mrs. Grissom's Salads, Inc.*, 541 S.W.2d 101, 106 (Tenn. 1976); *Paducah, Tenn. & Ala. R.R. v. Muzzell*, 95 Tenn. 200, 201, 31 S.W. 999, 999 (1895); *Beal v. Doe*, 987 S.W.2d 41, 46-47 (Tenn. Ct. App. 1998).

court must take the strongest legitimate view of the evidence that favors the verdict, disregard all contrary evidence, and allow all reasonable inferences to sustain the verdict. *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000); *Forrester v. Stockstill*, 869 S.W.2d 328, 329 (Tenn. 1994). If the reviewing court finds material evidence supporting the verdict, it must decline to disturb the judgment. *Alexander v. Armentrout*, 24 S.W.3d 267, 273 (Tenn. 2000). Only when it determines that the record does not contain material evidence to support the jury's verdict can the reviewing court set the judgment aside. *Turner v. Jordan*, 957 S.W.2d at 824; *Jackson v. Patton*, 952 S.W.2d 404, 405 (Tenn. 1997); *Next Generation, Inc. v. Wal-Mart, Inc.*, 49 S.W.3d 860, 863 (Tenn. Ct. App. 2000).

Fault allocations do not differ substantively from the other sorts of factual determinations that juries routinely make. The Tennessee Supreme Court, in *Turner v. Jordan*, explicitly endorsed using Tenn. R. App. P. 13(d)'s standard to review a jury's allocation of fault and has repeatedly let stand this court's decisions employing Tenn. R. App. P. 13(d) to review a jury's fault allocation. In the absence of a more definitive explanation by the Court of what "clearly erroneous" means, we have concluded that the Court's reference to a jury's allocation of fault as "clearly erroneous" should be construed harmoniously with the traditional review standards in Tenn. R. App. P. 13(d). Therefore, in the context of appellate review of a jury's allocation of fault, a conclusion that the jury's allocation of fault is "clearly erroneous" means nothing more than that the reviewing court has reviewed the entire record and has concluded that there is no material evidence to support the jury's allocation.[14]

## C.

We now apply these principles to the jury's decision to allocate 75% of the fault to Mr. Amacher and 25% of the fault to Mr. Henley. The only challenge to this decision currently available to Mr. Amacher is that the record contains no material evidence to support the jury's allocation of fault.[15] Accordingly, our sole task under Tenn. R. App. P. 13(d) is to examine the entire record to determine whether it contains any material evidence that supports the jury's allocation of fault between Messrs. Henley and Amacher.

---

[14]Tenn. R. App. P. 13(d)'s material evidence standard is similar to the federal courts' substantial evidence standard. In the federal courts, a verdict that is not supported by substantial evidence is clearly erroneous. *In re Westcap Enters.*, 230 F.3d 717, 725 (5th Cir. 2000); *Irving v. United States*, 49 F.3d 830, 835 (1st Cir. 1995); *Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1235 (8th Cir. 1994); *Duty v. United States of Am., Dep't of Interior*, 735 F.2d 1012, 1015 (6th Cir. 1984). However, the converse is not necessarily true because the concepts of lacking material evidence and being clearly erroneous are not synonymous. *Case v. Morrisette*, 475 F.2d 1300, 1307-08 (D.C. Cir. 1973). A federal appellate court may set aside a finding of fact, even if it is supported by substantial evidence, if the court has a definite and firm conviction that a mistake has been made. 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2585, at 577 n.20 (2d ed. 1995). We have concluded that the Tennessee Supreme Court did not intend to permit Tennessee's appellate courts to set aside a jury's allocation of fault that is supported by material evidence simply because they have a definite and firm conviction that some sort of mistake has been made.

[15]Mr. Amacher cannot argue now that the trial court erred by failing to find that Mr. Henley was 50% or more at fault as a matter of law. He concedes that he could not seek a judgment as a matter of law under Tenn. R. Civ. P. 50.02 because he failed to renew his motion for a directed verdict at the close of all the proof. *Cortez v. Alutech, Inc.*, 941 S.W.2d 891, 894 (Tenn. Ct. App. 1996); *Grissom v. Metropolitan Gov't*, 817 S.W.2d at 683. In addition, Mr. Amacher has not argued on appeal that the jury's verdict reflects passion, prejudice, or caprice.

Our review of the evidence is tempered by our recognition that we should not lightly take it upon ourselves to assume the responsibility for determining liability or non-liability in tort actions because the Constitution of Tennessee has assigned this task to the jury. *Smith v. Sloan*, 189 Tenn. 368, 374, 225 S.W.2d 539, 541 (1949); *Jackson v. B. Lowenstein & Bros., Inc.*, 175 Tenn. 535, 538, 136 S.W.2d 495, 496 (1940). We are not a jury of three with the prerogative to re-weigh the evidence, *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 300 (Tenn. Ct. App. 1995); *Lowe v. Preferred Truck Leasing, Inc.*, 528 S.W.2d 38, 41 (Tenn. Ct. App. 1975), or to determine where the "truth" lies. *D.M. Rose & Co. v. Snyder*, 185 Tenn. 499, 508, 206 S.W.2d 897, 901 (1947); *Davis v. Wilson*, 522 S.W.2d 872, 875 (Tenn. Ct. App. 1974). Nor are we empowered to substitute our judgment for the jury's, *Grissom v. Modine Mfg. Co.*, 581 S.W.2d 651, 652 (Tenn. Ct. App. 1978), even if we conclude that the evidence might well have supported a different conclusion,[16] or that the jury did not weigh the evidence well[17] or if we determine that we would have reached a different conclusion had we been members of the jury.[18]

The facts of this case are straightforward, and the testimony of the four occupants of the vehicle does not differ in any material respect. The facts show clearly that both Mr. Amacher and Mr. Henley acted negligently on June 28, 1995 when they set out to go horseback riding at 5:30 a.m. Mr. Amacher negligently decided to drive when he knew or should reasonably have known that he was too intoxicated to operate a motor vehicle safely. Mr. Henley was negligent because he decided to ride in a vehicle being operated by Mr. Amacher when he knew or should reasonably have known that Mr. Amacher was too intoxicated to drive. The evidence also shows that both Mr. Amacher's negligence and Mr. Henley's negligence caused Mr. Henley's injuries. Mr. Henley would not have been injured had Mr. Amacher not lost control of the vehicle and caused it to flip over. Likewise, Mr. Henley would not have been injured had he decided against riding with Mr. Amacher that morning.

Since both Mr. Amacher and Mr. Henley were at fault, the Tennessee Supreme Court's system of modified comparative fault required the jury, as the trier-of-fact, to allocate the fault between them. The jury decided that Mr. Amacher was comparatively more at fault than Mr. Henley. Thus, the question boils down to whether there is any material evidence in the record to support the jury's conclusion that Mr. Amacher was comparatively more at fault. The answer is yes.

The trier of fact has considerable latitude in allocating fault to the negligent parties. *Wright v. City of Knoxville*, 898 S.W.2d at 181; *Patterson ex rel. Patterson v. Dunn*, No. 02A01-9710-CV-00256, 1999 WL 398083, at *15 (Tenn. Ct. App. June 16, 1999) (No Tenn. R. App. P. 11 application filed); *Taggart v. Richards*, 1997 WL 677954, at *2.[19] The evidence shows that Mr. Amacher, even

---

[16]*East Tenn., Va. & Ga. R.R. v. Smith*, 77 Tenn. 685, 689 (1882).

[17]*In re Padgett's Will*, 54 Tenn. App. 1, 9, 387 S.W.2d 355, 359 (1964); *Wilson v. Gadd*, 4 Tenn. App. 582, 584 (1927).

[18]*Memphis St. Ry. v. Norris*, 108 Tenn. 632, 634, 69 S.W. 325, 326 (1902); *Goodman v. Balthrop Constr. Co.*, 626 S.W.2d 21, 24 (Tenn. Ct. App. 1981); *Clinard v. Pennington*, 59 Tenn. App. 128, 135, 438 S.W.2d 748, 751 (1968).

[19]This is not a new proposition. Over one century ago, the Tennessee Supreme Court reviewed a jury's verdict for an employee who was thrown from a railroad hand-car when the wooden handle on the lever he was using broke.

(continued...)

though he was only sixteen, was quite familiar with the effects of alcohol because he had been drinking since he was twelve years old. He had received institutional treatment on two occasions for alcohol abuse, and therefore, by June 28, 1995, drinking was much more than a youthful experiment for him. Despite his knowledge of the effects that alcohol had on him, Mr. Amacher went on a ten-hour drinking binge with Mr. Henley. After staying up all night and drinking half of a pint of whiskey and approximately two six packs of beer, Mr. Amacher insisted that he could drive a motor vehicle safely at 5:30 in the morning and brushed aside his companions' suggestions that he should let someone else drive. These essentially undisputed facts provided the jury with a material factual foundation for concluding that Mr. Amacher's fault exceeded Mr. Henley's. Accordingly, we find no merit in Mr. Amacher's argument that the record contains no material evidence to support the jury's allocation of 75% of the fault to him.

## IV.
### THE DAMAGE AWARDS FOR PERMANENT IMPAIRMENT AND FUTURE MEDICAL EXPENSES

We turn now to the issue of damages. Mr. Amacher maintains that there is no material evidence to support the jury's decision to award Mr. Henley $5,000 for the permanent impairment of his knee and $20,000 for his future medical expenses. We have concluded that the record contains material evidence supporting the jury's award for permanent impairment. However, we have also concluded that the record does not contain material evidence to support the jury's award for future medical expenses.

### A.

The existence and amount of damages in a personal injury action are questions of fact. *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 594 (Tenn. 1994); *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998). The party seeking damages has the burden of proving them. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999); *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982). While damages need not be proven with mathematical precision, the proof of damages must be concrete and definite enough to enable the trier-of-fact to make a reasonable assessment of the claimant's damages. *Provident Life & Accident Ins. Co. v. Globe Indemn. Co.*, 156 Tenn. 571, 576, 3 S.W.2d 1057, 1058 (1928); *Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 274 (Tenn. Ct. App. 1990). Damages cannot be based on conjecture and speculation. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d at 703. To be deemed speculative, a damage award must lack a factual foundation establishing with some certainty that the claimant was, in fact, damaged. *Church v. Perales*, 39 S.W.3d 149, 172 (Tenn. Ct. App. 2000); *Jennings v. Hayes*, 787 S.W.2d 1, 3 (Tenn. Ct. App. 1989).

Unless a personal injury claim is tried to a trial court sitting without a jury, determining the amount of damages is primarily the jury's prerogative. *Transports, Inc. v. Perry*, 220 Tenn. 57, 67, 414 S.W.2d 1, 5 (1967); *Grandstaff v. Hawks*, 36 S.W.3d 482, 499 (Tenn. Ct. App. 2000); *Buchanan*

---

[19](...continued)
The employee presented evidence that the handle was made of defective wood; while the railroad asserted that the handle was not defective. The Court declined to "disturb the finding" even though it concluded that the record contained evidence from which the jury could have concluded that the wooden handle was not made of defective wood. *East Tenn., Va. & Ga. R.R. v. Smith*, 77 Tenn. at 689.

*v. Harris*, 902 S.W.2d 941, 944 (Tenn. Ct. App. 1995). Thus, once the trial court approves a jury's damage award, the reviewing courts may not substitute their judgment for that of the jury. *McCullough v. Johnson Freight Lines, Inc.*, 202 Tenn. 596, 606, 308 S.W.2d 387, 392 (1957); *Hunter v. Burke*, 958 S.W.2d 751, 757 (Tenn. Ct. App. 1997). As with any of the jury's other factual findings, a reviewing court may second-guess a jury only when the record contains no material evidence to support the jury's verdict. *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d 326, 331 n.2 (Tenn. 1996); *Benson v. Tennessee Valley Electric Co-op*, 868 S.W.2d 630, 640 (Tenn. Ct. App. 1993); *Moore v. Bailey*, 628 S.W.2d 431, 434 (Tenn. Ct. App. 1981).

Assessing damages and allocating fault are similar in the sense that they are both issues of fact. They are dissimilar, however, with regard to the remedies available to reviewing courts when they conclude that there is no material evidence to support the jury's decision. Because reviewing courts may not modify a jury's allocation of fault, granting a new trial is the only proper remedy when the court determines that the allocation of fault is not supported by material evidence. It is not so with damages. When a damage award is not supported by material evidence, reviewing courts are encouraged to use their remittitur authority under Tenn. Code Ann. § 20-10-102(b) (1994) rather than to simply order a new trial. *Thrailkill v. Patterson*, 879 S.W.2d 836, 840 (Tenn. 1994); *United Brake Sys., Inc. v. American Envt'l Prot., Inc.*, 963 S.W.2d 749, 760 (Tenn. Ct. App. 1997); *Baker v. Bates*, 4 Tenn. Civ. App. (Higgins) 175, 178 (1913). The reviewing court's remittitur power is not limited to circumstances where the size of the verdict reflects passion, prejudice, or caprice. It may also be invoked when the verdict is excessive for any other reason. *Grant v. Louisville & Nashville Ry.*, 129 Tenn. 398, 409, 165 S.W. 963, 965 (1914).

## B.
## Damages for Permanent Impairment

Mr. Henley injured his right knee when he was thrown from the GMC Jimmy early on the morning of June 28, 1995. His knee was surgically reconstructed by an orthopaedic surgeon in Nashville who later observed:

> Even though we can reconstruct the ligaments and actually do very well, we can't put ligaments in like God made them. They're not perfect. The joints are not perfect. The ligaments that were torn on the inside of his knee have to heal secondarily. That doesn't create a normal ligament. In addition, we took about half of his outside cartilage out and that's important for distributing weight-bearing forces. When you have a devastating knee injury, you're more likely to get arthritis in the future and that may be ten or fifteen years. So even though we reconstructed it and he's doing well, that doesn't mean his knee is perfect.

The surgeon opined that the condition of Mr. Henley's knee following the wreck and surgical reconstruction constituted a permanent impairment.

Mr. Amacher elected not to present expert medical evidence to contradict the opinion of Mr. Henley's surgeon. He relied instead on evidence regarding Mr. Henley's physical condition between the time of the wreck and the trial. He proved that Mr. Henley had played football during his senior

year of high school and that he had been named the team's outstanding defensive lineman. He also proved that following his high school graduation, Mr. Henley had taken a job with Danley's Air Conditioning that required a great deal of physical exertion. He also proved that Mr. Henley had not required medical attention for his knee since he completed his rehabilitation following surgery.

All of the evidence brought forward by Mr. Amacher regarding Mr. Henley's residual impairment was certainly relevant. The jury was entitled to consider this evidence along with the unequivocal testimony of Mr. Henley's treating orthopaedic surgeon that Mr. Henley's knee injury was a permanent impairment. We may not at this juncture weigh the evidence ourselves. No matter how we might have weighed the evidence had we been members of the jury or had we been presiding at a bench trial, the surgeon's testimony provides the material evidence needed to sustain the jury's determination that the June 28, 1995 wreck left Mr. Henley permanently impaired. Accordingly, we have no basis for setting aside the $5,000 damage award for permanent impairment for lack of material evidence to support it.

Anticipating this result, Mr. Amacher argues that the award for permanent impairment should be set aside because Mr. Henley's surgeon did not undertake to ascribe a specific anatomical impairment rating to Mr. Henley's knee. This argument must also fail. A finding of permanent impairment must be based on expert proof. *Sanders v. Johnson*, 859 S.W.2d 329, 331 (Tenn. Ct. App. 1993). However, instead of establishing the permanency of the injury beyond a shadow of a doubt, *Williams v. Daniels*, 48 Tenn. App. 112, 121, 344 S.W.2d 555, 563 (1961), it is sufficient to show that the injury is permanent to a reasonable degree of certainty. *Porter v. Green*, 745 S.W.2d 874, 877 (Tenn. Ct. App. 1987). Thus, a specific anatomical impairment rating is unnecessary in cases of this sort to establish that an injury is permanent. *See Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 774 (Tenn. 2000); *Walker v. Saturn Corp.*, 986 S.W.2d 204, 207 (Tenn. 1998) (both cases holding that a specific anatomical impairment rating is not always indispensable to a finding of permanent vocational impairment). Thus, Mr. Henley's surgeon was not required give Mr. Henley a specific anatomical impairment rating to support his conclusion that Mr. Henley was permanently injured.[20]

### C.
### Damages for Future Medical Expenses

A person who is injured by another's negligence may recover damages from the other person for all past, present, and prospective harm. Restatement (Second) of Torts § 910 (1979). Included in the prospective harm for which damages may be recovered is the reasonable cost of the medical services that will probably be incurred because of the lingering effects of the injuries caused by the negligent person. *Reed v. Wimmer*, 465 S.E.2d 199, 210 (W. Va. 1995). To remove awards for

---

[20]Mr. Amacher places much emphasis on another case in which we set aside a verdict that included damages of permanent impairment. In the discussion of the lack of any material evidence of permanent impairment, we noted that the plaintiff's treating physician never gave the plaintiff a disability rating. *Sanders v. Johnson*, 859 S.W.2d at 332 (stating that "no disability rating was given by Dr. Slutsky"). This observation should not be twisted into a pronouncement we did not make. The holding in the case was that the issue of permanent impairment should never have been submitted to the jury because the plaintiff came forward with no material evidence to support his claim that he was permanently impaired. We did not hold that the issue of permanent impairment should not have gone to the jury simply because the plaintiff's treating physician did not give him a specific anatomical impairment rating.

-15-

future medical expenses from the realm of speculation,[21] persons seeking future medical expenses must present evidence (1) that additional medical treatment is reasonably certain to be required in the future and (2) that will enable the trier-or-fact to reasonably estimate the cost of the expected treatment. *Myers v. Hearth Techs., Inc.*, 621 N.W.2d 787, 793 (Minn. Ct. App. 2001).

The first component of a claim for future medical expenses is, in the language of the Tennessee Pattern Jury Instructions,[22] evidence that additional medical treatment is "reasonably certain to be required in the future." This "reasonable certainty" standard requires more than a mere likelihood or possibility. *Potts v. Celotex Corp.*, 796 S.W.2d 678, 681 (Tenn. 1990). It requires the plaintiff to establish with some degree of certainty that he or she will undergo future medical treatment for the injuries caused by the defendant's negligence.[23] It does not, however, require proof of future medical treatment to an absolute or metaphysical certainty. *Reyes v. Greatway Ins. Co.*, 582 N.W.2d 480, 485 (Wis. Ct. App. 1998). Rather, the "reasonable certainty" standard requires the plaintiff to prove that he or she will, more probably than not, need these medical services in the future. *Futrell v. Scott Truck & Tractor Co.*, 629 So. 2d at 458; *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 681 (Tex. App. 1991).[24]

The trier-of-fact must have some factual basis for reasonably estimating the cost of the future medical expenses. *Lynden, Inc. v. Walker*, 30 P.3d 609, 620 (Alaska 2001); *Bull Street Church of Christ v. Jensen*, 504 S.E.2d 1, 7 (Ga. Ct. App. 1998); *Mendralla v. Weaver Corp.*, 703 A.2d 480, 485 (Pa. Super. Ct. 1997). Accordingly, the second component of a claim for future medical expenses is evidence regarding the cost of the medical services. *Sherbahn v. Kerkove*, 987 P.2d 195, 198 (Alaska 1999); *District of Columbia v. Howell*, 607 A.2d 501, 506 (D.C. 1992); *Mossman v. Amana Soc'y*, 494 N.W.2d 676, 679 (Iowa 1993); *Quinn v. Wal-Mart Stores, Inc.*, 774 So. 2d 1093, 1099 (La. Ct. App. 2000); *Myers v. Hearth Techs., Inc.*, 621 N.W.2d at 793.[25]

---

[21]Damage awards for future medical expenses cannot be based on speculation. *Marchetti v. Ramirez*, 688 A.2d 1325, 1328 (Conn. 1997); *Futrell v. Scott Truck & Tractor Co.*, 629 So. 2d 449, 458 (La. Ct. App. 1993); *Faas v. State*, 672 N.Y.S.2d 145, 147 (App. Div. 1998); *Hammerschmidt v. Mignogna*, 685 N.E.2d 281, 285 (Ohio Ct. App. 1996).

[22]T.P.I. 3-Civil 14.11.

[23]*Blumenshine v. Baptiste*, 869 P.2d 470, 473 (Alaska 1994) (requiring proof of a reasonable probability that the future medical treatment will occur); *Hamernick v. Bach*, 779 A.2d 806, 812 (Conn. App. Ct. 2001) (holding that determinations of future medical expenses must be based on reasonable probabilities, not possibilities); *Kloster Cruise, Ltd. v. Grubbs*, 762 So. 2d 552, 556 (Fla. Dist Ct. App. 2000) (requiring proof that future medical expenses are more probable than not); *Molitor v. Jaimeyfield*, 622 N.E.2d 1250, 1253 (Ill. App. Ct. 1993) (requiring that future medical expenses be proved with a reasonable degree of medical certainty); *Symington v. Mayo*, 590 N.W.2d 450, 452 (N.D. 1999) (requiring a reasonable medical certainty that future medical services are necessary); *Reed v. Wimmer*, 465 S.E.2d at 210 (setting aside an award for future medical expenses where no physician testified that the plaintiff would need additional medical treatment).

[24]Some courts have quantified the required probability by holding that it means more than a fifty percent chance. *Pustjovsky v. Rapid-American Corp.*, 35 S.W.3d 643, 652 (Tex. 2000); *Jordan v. Bero*, 210 S.E.2d 618, 640 (W. Va. 1974) (Neely, J., concurring); *see also Sebroski v. United States*, 111 F. Supp. 2d 681, 686 (D. Md. 1999) (requiring that there must be more evidence favoring the likelihood of future medical treatment than against it).

[25]We have set aside awards for future medical expenses when the plaintiff has presented no proof of the probable cost of the services or when the estimate of the future cost is too speculative. *Cochran v. Lowe*, No. 03A01-
(continued...)

The trier-of-fact enjoys a certain degree of leeway in determining the cost of future medical expenses. *Richardson v. Chapman*, 676 N.E.2d 621, 628 (Ill. 1997). Accordingly, the cost of future medical treatment need not be proved with the same certainty required to prove the cost of past medical treatment. *Willson Safety Prods. v. Eschenbrenner*, 788 S.W.2d 729, 733 (Ark. 1990); *Seymour v. Carcia*, 604 A.2d 1304, 1306 (Conn. 1992). Instead of precise evidence[26] regarding these anticipated costs, it is sufficient to present estimates of the costs within a reasonable range. *Mendralla v. Weaver*, 703 A.2d at 485; *Jordan v. Bero*, 210 S.E.2d at 637. Thus, in the case of a permanent injury that will require continuing treatment, evidence of the cost of past medical treatment can provide evidence of the cost of the future medical treatment as long as the plaintiff has proved that the future medical treatment will be required and that this treatment is similar to the treatment that has already been provided. *Wal-Mart Stores, Inc. v. Londagin*, 37 S.W.3d 620, 627 (Ark. 2001); *Marchetti v. Ramirez*, 688 A.2d at 1328; *Symington v. Mayo*, 590 N.W.2d at 452-53; *Gladewater Mun. Hosp. v. Daniel*, 694 S.W.2d 619, 621 (Tex. App. 1985).[27]

Mr. Henley presented competent evidence that his knee injury is permanent. However, proving that an injury is permanent does not, by itself, provide a sufficient basis for awarding future medical expenses. *Valley Nat'l Bank v. Haney*, 558 P.2d 720, 722 (Ariz. Ct. App. 1976); *Spleas v. Milwaukee & Suburban Transp. Corp.*, 124 N.W.2d 593, 597 (Wis. 1963). Thus, we must examine the record to determine whether it contains any material evidence (1) establishing that it is reasonably certain that Mr. Henley will require additional medical treatment for the knee injury he sustained on June 28, 1995 and (2) providing a basis for a reasonable trier-of-fact to determine how much this treatment will probably cost.

The record contains no material evidence that Mr. Henley will require additional medical treatment for his knee, let alone the cost of this treatment. When Mr. Henley's orthopaedic surgeon last saw him in March 1996, he released Mr. Henley without restrictions and without any plans for further treatment of any sort. Thus, there is no competent medical evidence that Mr. Henley will require any additional medical treatment for his knee. In the absence of evidence of a need for

---

[25](...continued)
9809-CV-00292, 1999 WL 233382, at *2 (Tenn. Ct. App. Apr. 16, 1999) (No Tenn. R. App. P. 11 application filed) (suggesting a remittitur because the plaintiff presented no proof of the future cost of medications); *Bowers v. City of Chattanooga*, 855 S.W.2d 583, 587 (Tenn. Ct. App. 1992) (vacating an award for future medical expenses for multidisciplinary rehabilitation because the plaintiff's psychologist conceded that he could not give a reasonable cost projection); *Kincaid v. Lyerla*, 680 S.W.2d 471, 472-73 (Tenn. Ct. App. 1984). *But see Palmer v. Norfolk-Southern Ry.*, No. 03A01-9309-CV-00313, 1994 WL 111037, at * 3 (Tenn. Ct App. Mar. 30, 1994), *perm. app. denied* (Tenn. Aug. 22, 1994) (stating that the jury is not precluded from awarding damages for future medical expenses when no evidence regarding the cost of these expenses is offered). The *Palmer* case involved a $400,000 general verdict for a painful, debilitating wrist injury suffered on the job, and it is not clear from the record what portion of this verdict, if any, was for future medical expenses. This court vacated the judgment and ordered a new trial on other grounds.

[26]Precise evidence of the cost of future medical expenses is not required. *Roberts v. Williamson*, 52 S.W.3d 343, 350 (Tex. App. 2001); *Patterson v. Horton*, 929 P.2d 1125, 1131 (Wash. Ct. App. 1997).

[27]For example, a plaintiff whose injury will require continuing medication or therapy may introduce evidence of the cost already incurred for the same medication or therapy to prove his or her future expenses for this medication or therapy.

continuing medical treatment, it is not surprising that the record contains no evidence at all of the cost of any future medical expenses Mr. Henley might have as a result of his knee injury.[28]

We conclude that there is no material evidence in the record to support the jury's decision to award Mr. Henley $20,000 for future medical expenses. Accordingly, pursuant to our authority under Tenn. Code Ann. § 20-10-102(b), we suggest a $20,000 remittitur of the jury's calculation of Mr. Henley's damages which would reduce Mr. Henley's total recovery from $34,125 to $19,125. Mr. Henley must elect either to accept or to reject this remittitur. Within thirty days following the issuance of the mandate in this case, Mr. Henley shall file a written notice in the trial court either accepting or rejecting this remittitur. If Mr. Henley accepts this remittitur, the trial court shall enter a judgment against Mr. Amacher and his father for $19,125. If Mr. Henley rejects this remittitur, the trial court shall enter an order granting Mr. Henley a new trial.

## V.
### THE JOINT AND SEVERAL LIABILITY OF MR. AMACHER AND HIS FATHER

As a final matter, Mr. Amacher's father, Kenneth Amacher, takes issue with the jury's use of the family purpose doctrine to hold him jointly and severally liable for Mr. Henley's damages. He insists that the doctrine is inapplicable because he did not know that his son was operating the vehicle on June 28, 1995, and because his son was not on his business at the time. While both of these factual assertions may be true, neither is essential to the proper application of the family purpose doctrine in this case.

The family purpose doctrine is a judicially-created legal fiction, *Thurmon v. Sellers*, ___ S.W.3d ___, ___, 2001 WL 256124, at *7 (Tenn. Ct. App. 2001), that has survived the Tennessee Supreme Court's adoption of its system of modified comparative fault. *Camper v. Minor*, 915 S.W.2d 437, 438 (Tenn. 1996). Under this doctrine, the head of a household who provides a motor vehicle for the use of family members is vicariously liable for any other family member's negligent use of that vehicle. *Camper v. Minor*, 915 S.W.2d at 447. Persons seeking to invoke the family purpose doctrine must prove: (1) the head of the household furnished and maintained the motor vehicle for the pleasure and comfort of the other family members, *Scates v. Sandefer*, 163 Tenn. 558, 564, 44 S.W.2d 310, 311 (1931) and (2) that a family member was operating the vehicle for that purpose with the owner's acquiescence. *Gray v. Amos*, 869 S.W.2d 925, 927 (Tenn. Ct. App. 1993).

The owner's consent to the family member's use of the vehicle may be express or implied. *Camper v. Minor*, 915 S.W.2d at 447. The family purpose doctrine's requirement that the driver be engaged in the owner's business does not mean that the driver must have been on a specific errand for the owner at the time of the incident giving rise to the lawsuit. It means only that the family member must have been using the vehicle consistently with the head of the household's purpose for purchasing it – the pleasure and convenience of the family. *Thurmon v. Sellers*, ___ S.W.3d at ___, 2001 WL 256124, at *7-8.

---

[28] The evidence regarding the cost of Mr. Henley's reconstructive surgery and post-surgical rehabilitation do not provide a basis for projecting future medical costs because there is absolutely no evidence that Mr. Henley will be required to undergo a second reconstructive surgery because of the injury to his knee.

Kenneth Amacher owned the 1987 GMC Jimmy that Mr. Amacher was driving on the morning of June 28, 1995. While he had purchased the vehicle primarily for the use of Mr. Amacher's brother, Chris, Kenneth Amacher knew that Mr. Amacher occasionally drove the vehicle with his brother's permission. Kenneth Amacher never forbade Mr. Amacher to drive the vehicle and never instructed his son, Chris, not to permit Mr. Amacher to drive the vehicle. All this provides material evidence from which the jury could rationally have concluded: (1) that Kenneth Amacher is the head of the Amacher family, (2) that he furnished the GMC Jimmy for the use of his two sons – Chris primarily but also Mr. Amacher, and (3) that Mr. Amacher was using the GMC Jimmy on the morning of June 28, 1995, for his own pleasure and convenience with his brother's permission. Accordingly, the record contains material evidence to support the jury's application of the family purpose doctrine to hold Kenneth Amacher jointly and severally liable for Mr. Henley's injuries.

## VI.

We affirm the judgment finding that Kenneth Amacher and Russell D. Amacher are jointly and severally liable to Randall D. Henley for the injury he sustained on June 28, 1995. We also affirm the jury's assessment of Mr. Henley's damages with the exception of its decision to award Mr. Henley $20,000 for future medical expenses. Because we have concluded that the record does not contain material evidence to support an award for future medical expenses, we suggest a remittitur of $20,000 that would, if accepted, reduce Mr. Henley's judgment from $34,125 to $19,125. Within thirty days following the issuance of the mandate in this case, Mr. Henley shall file a written notice in the trial court either accepting or rejecting this remittitur. If Mr. Henley accepts this remittitur, the trial court shall enter a judgment against Mr. Amacher and his father for $19,125. If Mr. Henley rejects this remittitur, the trial court shall enter an order granting Mr. Henley a new trial. We tax the costs of this appeal in equal proportions to Russell D. Amacher and Kenneth Amacher and their surety and to Randall D. Henley, for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE